RUTH CHAMBERLAIN, as Administratrix of CHARLES H. CHAMBERLAIN, Deceased, Respondent, *v.* LEHIGH VALLEY RAILROAD COMPANY, Appellant.

Third Department, May 16, 1923.

**Railroads — action for death of plaintiff's intestate caused by collision of motor truck and train at crossing — highway crossed railroad at acute angle — decedent who failed to look backward in direction of approaching train at point where view was unobstructed was guilty of contributory negligence as matter of law.**

In an action to recover damages for the death of plaintiff's intestate who was killed at a grade crossing in a collision between a motor truck in which he was riding and one of defendant's trains, it must be held that he was guilty of con-

tributory negligence as a matter of law where it appears that the highway paralleled the railroad track and crossed it at an acute angle; that the view along the track for about 600 feet from the crossing was unobstructed; that the train was moving in the same general direction as the motor truck and that the decedent as he approached the crossing failed to look back at a point where his view was unobstructed.

KILEY, J., dissents, with opinion.

APPEAL by the defendant, Lehigh Valley Railroad Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Tioga on the 16th day of August, 1922, upon the verdict of a jury for $7,250, and also from an order entered in said clerk's office on the same day denying defendant's motion for a new trial made upon the minutes.

*Cobb, Cobb & Heath* [*Riley H. Heath* of counsel], for the appellant.

*Lynch & Clifford* [*Fred W. Clifford* of counsel], for the respondent.

HINMAN, J.:

The appeal involves a grade crossing accident and the sole question is whether the plaintiff's intestate, as a matter of law, was chargeable with contributory negligence barring a recovery by the plaintiff. It is well settled of course that the burden of proving contributory negligence rests upon the defendant (Code Civ. Proc. § 841-b, as added by Laws of 1913, chap. 228)* and that the plaintiff is entitled to the most favorable inferences that may be drawn from the testimony.

The deceased, on and prior to the 1st day of November, 1920, the date of the accident, was the owner of an auto-truck, with which he was engaged in the business of long distance trucking and he resided at the village of Waverly, N. Y. On the morning of that day, the deceased, accompanied by one Wilson, left Waverly to go to Interlaken, a village about forty-five miles away, for the purpose of obtaining and bringing to Waverly a load of household goods and furniture for Wilson. Having obtained the load of furniture, they were returning and arrived at the crossing where the accident occurred at about one-twelve P. M. The crossing was about fourteen miles from Waverly, the home of the deceased. The highway upon which the deceased was approaching the crossing ran in a northerly and southerly direction and the deceased was proceeding southerly. The defendant had an interlocking

* Now Civ. Prac. Act, § 265; Dec. Est. Law, § 131.—[REP.

system of tracks, due to a union of a branch line with its main line, which two lines of tracks began to converge at this crossing and completely converged into one main line a short distance south of the crossing. At the point of the crossing, the main line came in from the northwest and the Ithaca branch line came in from the north, but the first union of the two lines was not effected until a point was reached about 75 feet south of the crossing. At the place where the highway crossed them, there was a considerable space between the main and branch lines which, according to the scaled map in evidence, appears to have been about 25 feet. The main line was double tracked at the crossing and the branch line was double tracked north of the crossing but at the crossing the branch line tracks crossed each other, culminating in a single track a few feet south of the crossing. The engine of a train from the north on this branch line struck the truck just back of the center of the truck and threw it over on one of the main tracks. The highway, upon which the deceased was approaching in a southerly direction, ran in the same general direction as the branch line and practically alongside of it for a distance of about 1,000 feet. This branch line, however, as one looked north from the crossing in question, made a curve to the right and crossed the highway at a point about 1,000 feet away. The highway was substantially straight from the latter crossing to the crossing in question. A traveler along the highway moving in a southerly direction could, by looking directly backward along the highway at any point between the two crossings, see a train on the branch line as it crossed the highway at the upper crossing; but as soon as such train passed the upper crossing, coming toward the crossing in question, there were buildings and other obstacles obstructing it from view until it emerged from behind a red barn near the track, a point about 600 feet from the crossing where the accident occurred. The photographs show no other obstruction to the view of the train after the 600-foot point was reached. The traveler along the highway moving southerly toward this crossing had a clear view for 600 feet along the track. There was nothing to prevent the deceased from seeing that distance up this track if he took care to look and the plaintiff's counsel himself argues that the deceased could see a clear track for this 600 feet from the time when he was nine and two-tenths seconds, time distance, from the point of the accident. He was traveling about eight miles per hour, which, at that time distance, would place him 105 feet from the point of the accident. The photographs clearly indicate that he could have seen from at least that point to the point of the accident, had he looked. The highway continued practically straight as

it crossed the tracks but since the branch line and the highway met at a sharply acute angle at the crossing, the highway ran diagonally across the tracks giving the deceased a fair view of the main line in both directions and of the highway ahead of him but requiring him to look to the right and in a backward direction to see a train approaching on the branch line; and as he approached the crossing, he was required to look in an increasingly backward direction. He was seated in a cab at the left of the seat, driving, and Wilson was seated at his right. It was a standard open type of wooden cab. Wilson testified as follows: " Q. As you approached the crossing where the accident occurred, state what you did and what Mr. Chamberlain did, as you observed? * * * A. I was watching down the main line. Q. What for? A. Oh, for trains, as one naturally would, and he was leaning out on the left hand side, on his side, as I supposed, to watch. * * * I should say his head and shoulders were outside of the cab. * * * As I remember, one hand was on the steering wheel and he was leaning out, probably his head and shoulders. I should say his head and shoulders maybe were outside of the cab." Again Wilson testified: " Q. But as you approached this crossing at the point of accident you say you looked up the main line for trains? A. Yes. Q. And that is the only place you did look? A. I did, yes; that is the only one." The deceased did not need to lean out the left side to see along the main tracks in either direction. They were plainly in view. If he leaned out on that side to look the reasonable explanation is that given by plaintiff's own counsel, namely, to look back; but the obvious fact is that in doing so he turned his back upon the clear space of 600 feet north of the crossing along this branch line, upon which the train was approaching. The photographs clearly demonstrate this to be a fact and indicate that if he was looking to see whether a train was approaching on the branch line, the most that he could have seen was the upper crossing 1,000 feet away, where his vision of an approaching train was narrowed to the width of the highway, affording a mere glimpse which was immediately cut off by buildings and other obstructions behind which the train passed until it reached the clear space upon which the deceased turned his back in this effort to see. The evidence does not disclose the point on the highway where the deceased leaned out of the cab, except that it was as he approached the crossing; but that is not important since the effect of his leaning out of the left side of the cab at any point as he approached the crossing was to turn his back upon the open space where he could have seen the train. We cannot assume that he looked and saw a clear track for a distance of 600 feet, as plaintiff's counsel would

have us infer, because either he looked in the wrong place or he did not attempt to look at all. If he was satisfied to confine his looking back to the view which he could obtain of a train as it passed over the upper crossing, without any effort to look back over the space of track which was clear for a distance of 600 feet, he took a chance which was not the exercise of the care which the law required him to exercise for his own safety. It was not the action of a careful and prudent man. The difficulty of looking in the right direction did not absolve him from the duty to look with care in that direction. Neither did the assumed negligence of the defendant in failing to give him any warning signal absolve him from that duty. He did not look when and where looking would be of any advantage. There was no moving object or other obstacle in his path to distract his attention from the obvious peril of the crossing, no reason why he should not have looked with care in each direction, and having taken the chance we must hold him guilty of contributory negligence as a matter of law. (*Cassidy* v. *Fonda, Johnstown & Gloversville R. R. Co.,* 200 App. Div. 241; 202 id. 768; affd., 234 N. Y. 599; *Barry* v. *Rutland R. R. Co.,* 203 App. Div. 287; *Castle* v. *Director-General of Railroads,* 232 N. Y. 430; *Barnasky* v. *N. Y., O. & W. R. Co.,* 226 id. 435.)

The judgment and order should be reversed and the complaint dismissed, with costs.

H. T. KELLOGG, Acting P. J., and VAN KIRK, J., concur; HASBROUCK, J., concurs in reversal and votes for a new trial; KILEY, J., dissents, with an opinion.

KILEY, J. (dissenting):

The accident out of which this action arose happened on defendant's railroad where it crosses the highway at grade near the village of Van Etten, Chemung county, N. Y. On the 1st day of November, 1920, about one-twelve P. M., the plaintiff's intestate was driving a truck loaded with household furniture belonging to one Wilson, who was with him on the truck, when the collision occurred. He, Chamberlain, was so badly injured that he died on November sixth thereafter. At the trial of the action the plaintiff had a verdict. On this appeal but a single question is presented, viz., that " plaintiff's intestate was guilty of contributory negligence as a matter of law." That the defendant was chargeable with negligence, as found by the jury, is not questioned. Plaintiff is entitled to the most favorable construction that can be put upon the evidence to sustain the verdict. Some of the elements constituting the negligence of the defendant must be considered on the question presented here. The highway upon

which the accident occurred approximately parallels the railroad from Van Etten to Waverly, a distance of about fourteen miles. The evidence does not disclose that plaintiff's intestate had ever been over this highway before this trip in question. Two lines of defendant's railroad system converge near this point, the main line, double tracked, from Buffalo to New York, and what is called the Ithaca branch, also double tracked. Plaintiff's intestate and the train with which he collided were each traveling in a southerly direction. The evidence indicates that plaintiff's intestate was driving his truck toward the crossing at the speed of about eight miles an hour, and that the train was coming on toward the same crossing at a rate of speed from thirty-five to forty-five miles an hour. North of this crossing there was another crossing known as the Westbrook crossing; this crossing was between 1,000 and 1,100 feet north. The first whistling post was 2,300 feet north of the crossing in question. The lay of the land inclined toward the south until within a few feet of the tracks where it was leveled up for the tracks and some little distance north on the highway. The train in question was the Black Diamond Express, the fastest train in defendant's system. It was coasting down through this valley; it did not stop at the Van Etten station. The first place plaintiff's intestate could have seen the train as he approached this crossing after he had made the Westbrook crossing was a point 600 feet to the north. It then came around a curve and from behind a red barn standing near the track. If the train was traveling forty-five miles an hour, as the jury must have found by its verdict, it was nine and two-tenths seconds, time distance, from the point of the accident. The fair inference from the evidence, which discloses that the deceased and Wilson did look, is that they looked just before the train came around the curve and the red barn which is near the track at that point. The jury has found that no warning was given and that the train was "gliding." After looking back the plaintiff's intestate had something to occupy his attention; he had to look up and down four converging tracks and onto the highway running in a southerly direction ahead. The highway crosses the tracks at an oblique angle and to cross the rails carefully with his load he had to swerve to the left and bring his wheels both against and over the rail at the same time; he had eight of those rails to cross. The photographs disclose considerable obstruction to the view as the crossing is approached. Defendant's engineer testified he could not see the crossing until he was about upon it. Under all of the circumstances appearing here I do not think that the question of deceased's contributory negligence was one that could be decided

as a matter of law. The defendant had the burden of proof on that question. (Code Civ. Proc. § 841-b, as added by Laws of 1913, chap. 228.) Mr. Justice TUTHILL heard the evidence and saw the witnesses; he reserved the motion for nonsuit, received briefs and heard argument; he reached the proper conclusion when he denied defendant's motion. It was a question of fact for the jury. (*Friess* v. *N. Y. C. & H. R. R. R. Co.*, 67 Hun, 206; affd., without opinion, 140 N. Y. 639; *Massoth* v. *Delaware & Hudson Canal Co.*, 64 id. 524; *Salter* v. *Utica & Black River Railroad Co.*, 88 id. 42; *Greany* v. *Long Island Railroad Co.*, 101 id. 419.) The court says in the last cited case: " He could probably have avoided the accident by stopping before he passed upon the track. But that is a degree of care not usual even with very prudent persons. It has not been decided by the courts of this State that a person approaching a railroad is bound as matter of law to stop, to avoid the imputation of negligence." *Carr* v. *Pennsylvania R. R. Co.* (225 N. Y. 44) is a case, the vital features of which, on the question of contributory negligence, are not unlike the case at bar. It is a late expression of the Court of Appeals, and is controlling here. This being a death case a different rule of consideration is required than if the injured party had lived and was able to testify. In *Harrison* v. *N. Y. C. & H. R. R. R. Co.* (195 N. Y. 86) the court, having found that the question of contributory negligence was properly submitted to the jury, said: " The deceased having been killed, less evidence was required from his personal representative to establish his freedom from negligence than would have been required from him had he survived and been able to testify." In *Braun* v. *Buffalo General Electric Co.* (200 N. Y. 484), at top of page 493, Judge HISCOCK said: " It has often been said that where the injured person is dead wider latitude should be allowed to the jury in passing on this question of contributory negligence, and this case seems to come well within those where it has been decided on meagre evidence that the care of the deceased person was a question for the jury."

The judgment should be affirmed, with costs.

Judgment and order reversed upon the law and complaint dismissed, with costs.