RUTH CHAMBERLAIN, as Administratrix of the Estate of
CHARLES H. CHAMBERLAIN, Deceased, Appellant, v.
LEHIGH VALLEY RAILROAD COMPANY, Respondent.

Negligence — railroads — contributory negligence in death
cases ordinarily question for jury — degree of care to be
exercised by driver of vehicle in approaching railroad crossing
— when error to hold driver guilty of contributory negligence
as matter of law for failure to look in particular direction at
particular time.

1. Under section 265 of the Civil Practice Act, which casts the
burden of proof of contributory negligence in death cases upon the
defendant, if any possible hypothesis based on the evidence forbids
the imputation of fault to the deceased as matter of law, the question
is for the jury.

2. The degree of care to be exercised by the driver of a vehicle in
approaching a railroad crossing is determined to some extent by the
elements of danger which exist. When the view is obstructed; when
the traveler approaches the crossing with his car under control
and his mind on the danger; when at the time of the accident he is
looking from a proper view point in one direction with his attention
directed to the possible approach of a train, it cannot be said as matter
of law that he should within ten seconds shift his attention to another
direction, although had he done so he would have seen the approaching
train in time to avoid the accident. The question is not whether he
would have seen the train if he had been looking in the direction from
which it came at the point where it was first visible, but whether as
he approached the crossing he looked and listened with a reasonable
degree of care and saw and heard what he should, with proper
attention, have seen and heard.

3. In an action to recover for the death of plaintiff's intestate who,
while driving a motor truck across defendant's railroad tracks at a
grade crossing near which two lines of the railroad converged, was
killed by collision of one of its trains, where it appeared that deceased
was looking out from his side of the car away from the approaching
train and it might be inferred that he was looking to see whether a
train was visible in that direction, it was error for the Appellate
Division to hold in substance that because the deceased did not look
to the right when he was about one hundred feet from the crossing, in
the direction from which the train came, and did not use the period of

less than ten seconds which elapsed before the accident to stop his car and avoid the accident, he was guilty of contributory negligence as matter of law.

*Chamberlain* v. *Lehigh Valley R. R. Co.*, 205 App. Div. 391, reversed.

(Argued April 9, 1924; decided May 20, 1924.)

APPEAL from a judgment, entered June 30, 1923, upon an order of the Appellate Division of the Supreme Court in the third judicial department, reversing a judgment in favor of plaintiff entered upon a verdict and directing a dismissal of the complaint.

*Martin S. Lynch* for appellant. The contributory negligence of the plaintiff's intestate was a question of fact for the jury. (*Greany* v. *Long Island R. R. Co.*, 101 N. Y. 419; *Mullin* v. *Schenectady R. R. Co.*, 214 N. Y. 300; *Braun* v. *Buffalo General El. Co.*, 200 N. Y. 484; *Carr* v. *Penn. R. R. Co.*, 225 N. Y. 44; *Massoth* v. *Hudson Canal Co.*, 64 N. Y. 524; *Lani* v. *Atlantic Works*, 111 Mass. 136; *Davis* v. *N. Y. C. & H. R. R. R. Co.*, 47 N. Y. 400; *Horton* v. *N. Y. C. R. R. Co.*, 237 N. Y. 38.)

*Howard Cobb* for respondent. Plaintiff's intestate was guilty of contributory negligence as a matter of law. (*Bronson* v. *N. Y. C. R. R. Co.*, 24 App. Div. 262; *Dolfini* v. *Erie R. R. Co.*, 178 N. Y. 1; *Cassidy* v. *Fonda, Johnstown & Gloversville R. R. Co.*, 200 App. Div. 241; 234 N. Y. 599; *Castle* v. *Director-General of Railroads*, 232 N. Y. 430; *Barnasky* v. *N. Y., O. & W. R. Co.*, 226 N. Y. 435.)

POUND, J. This is a death case. Plaintiff's intestate was killed in a grade crossing collision as he was attempting to cross the tracks of defendant near Van Etten junction. On the trial plaintiff obtained a verdict of $7,250, but her complaint has been dismissed by the Appellate Division on the ground that intestate's contributory negligence was established as matter of law.

It was always the rule that in cases of this kind the question of contributory negligence is ordinarily one of fact for the jury.    (*Massoth* v. *Delaware & Hudson Canal Co.*, 64 N. Y. 524.)    Under the Code of Civil Procedure (§ 841-a), now Civil Practice Act (§ 265), which casts the burden of proof of contributory negligence in death cases upon the defendant, we have held that if any possible hypothesis based on the evidence forbids the imputation of fault to the deceased, as matter of law, the question is for the jury.    (*Nicholson* v. *Greeley Square Hotel Co.*, 227 N. Y. 345, 349.)    In considering the effect of a like provision in the Labor Law in favor of the injured employee in an action against his employer, it was said:

" Now that plaintiff. has been relieved of the burden of proving affirmatively that his own negligence did not. contribute to the accident, his case should, when he has made out a *prima facie* case of defendant's negligence, be submitted to the jury, unless it appears that the uncontradicted proof of his own negligence is so certain and convincing that no reasonable mind could reach the conclusion that he had been careful, even though a verdict in his favor would be set aside as against the weight of evidence."    (*Seyford* v. *Southern Pacific Co.*, 216 N. Y. 613, 615.)

The material facts as testified to by plaintiff's witnesses are as follows: On the 1st day of November, 1920, about 1.12 P. M., plaintiff's intestate was driving a motor truck loaded with household furniture belonging to one Wilson, who was with him on the truck when the collision occurred, transporting it from Interlaken south to Waverly, which was about fourteen miles from the crossing.    Two lines of defendant's railroad system converge near this point; the main line, double-tracked, from Buffalo to New York is joined by the Ithaca branch, which is also double-tracked.    The highway upon which the accident occurred approximately parallels the railroad for some distance, and both run, generally speaking, north and south, but

the highway first crosses the Ithaca branch railroad at the Westbrook crossing about 1,000 feet north of the Van Etten crossing, where a curve in the railroad again brings the highway across the railroad tracks, both of the main line and the Ithaca branch, at an angle. The evidence does not disclose that plaintiff's intestate had ever been over this highway before this trip. The truck and the train were each traveling in a southerly direction. Plaintiff's intestate was driving his truck toward the crossing at the speed of about eight miles an hour. The train was approaching the same crossing from the north on the Ithaca branch at the speed of forty-five miles an hour. It was the Black Diamond Express, the fastest train on the road. It did not stop at Van Etten junction but was coasting along, being about to go from the Ithaca branch to the main line to New York. One coming from the north on the highway crosses the tracks of the Ithaca branch before reaching the main tracks. The truck was struck just back of the middle. As one approaches the railroad on the highway, the view of the tracks is obstructed. The first place at which plaintiff's intestate could have seen the train if he had been looking in its direction was when it was at a point 600 feet north of the crossing. It then came in sight around a curve and from behind a red barn standing near the track. If the train was traveling 45 miles an hour it was then only 9.2 seconds, time distance, from the point of the accident. If he was traveling at a speed of 8 miles an hour, deceased was 105 feet from the point of the accident when the train came in sight.

Deceased was seated on the left of the seat driving the car. Wilson was seated at his right, looking ahead for trains on the main track. Deceased was looking out from his side of the car away from the approaching train, but it might be inferred that he was looking back toward the Westbrook crossing, which he had passed over a few minutes before, and which was in plain sight at this

point, to see whether a south-bound train on the Ithaca branch was visible at that crossing.

The Appellate Division has held in substance that because the deceased did not look to the right when he was 105 feet or less from the crossing, in the direction from which the train came, and did not use the period of 9.2 seconds or less to stop his car and avoid the accident, he was guilty of contributory negligence as matter of law.

This we think was error. With one pair of eyes one cannot look in two directions at the same time. The duty of deceased was to look in both directions, keep control of his car and negotiate it across the tracks. If he had looked in the direction of the approaching train ten seconds before the accident, the jury might have said that he would have seen nothing and heard nothing to warn him of the approaching danger. Should he have continued to look in that direction because it now appears that the danger was there, or might he direct his attention to the possible approach of a train on the Ithaca branch at another point?

The question is not whether he would have seen the train if he had been looking in the direction from which it came at the point where it was first visible, but whether as he approached the crossing he looked and listened with a reasonable degree of care and saw and heard what he should, with proper attention, have seen and heard. Of course a traveler who approaches a straight single track at right angles, with an unobstructed view in both directions, may with little care avoid the danger of an accident. He may not say that he looked and did not see what was in plain sight. A seeing glance to the right and the left is enough and that much is required of him. But the degree of care is determined to some extent by the elements of danger which exist. When the view is obstructed; when the traveler approaches the crossing with his car under control and his mind on the danger;

when at the time of the accident he is looking from a proper view point in one direction with his attention directed to the possible approach of a train, it cannot be said as matter of law that he should within ten seconds shift his attention to another direction, although had he done so he would have seen the approaching train in time to avoid the accident. (*Carr* v. *Penn. R. R. Co.*, 225 N. Y. 44.)

Danger threatened from the north and south on the main tracks. Wilson was looking after that. Danger also threatened from the north on the Ithaca branch. Having made the Westbrook crossing over the Ithaca branch in safety, no proof being offered that the deceased could have seen or did see the approaching train at that crossing, was he bound to assume that without warning a train would go over the Westbrook crossing, come up behind him into the 1,000 or 1,200 feet between the two highway crossings, and emerge from behind the barn while he was looking toward the Westbrook crossing? Or rather was he not bound to look back toward the Westbrook crossing to relieve himself from the imputation of negligence? We think the question was for the jury and that they might well have found that under the circumstances he acted with due regard for his safety.

As the reversal was upon the law only, the judgment of the Appellate Division should be reversed and that of the Trial Term affirmed, with costs in this court and in the Appellate Division.

McLAUGHLIN, J. (dissenting). I dissent. The only fair inference which I think can be drawn from the evidence, giving the plaintiff the most favorable view of it, is that the intestate was guilty of contributory negligence as matter of law.

The accident occurred a few minutes after 12 o'clock noon. Had the intestate looked when about one hundred feet from the crossing he could have seen the train as it

came from behind the red barn, which was about six hundred feet from the crossing. Had he looked at any time after the train passed that point until it reached the crossing, he could have seen it. It was a clear day. There was nothing to obstruct his view or distract his attention. The only possible explanation is that he did not look to see whether the train were approaching.

It is suggested, not by counsel, that " deceased was looking out from his side of the car, away from the approaching train, but it might be inferred that he was looking back toward the Westbrook crossing, which he had passed over a few minutes before, and which was in plain sight at this point, to see whether a south-bound train on the Ithaca branch was visible at that crossing." The Westbrook crossing was something like a thousand feet away. It was north of the crossing where the accident occurred. The intestate was looking south. I know of no basis for an inference because he looked south that he also looked in the opposite direction. But if so, there is no possible explanation of why he did not see the approaching train after it passed the red barn and stop his car. The evidence is undisputed if he had looked in that direction after that he would have seen the approaching train. The truth undoubtedly is he · did not look at all after the train came in sight. He was obligated to look in both directions and when looking would have served some purpose. Not having done so, I think the Appellate Division was right in holding that he was guilty of contributory negligence as matter of law.

This view is sustained by several recent decisions of this court. (*Cassidy* v. *Fonda, Johnstown & Gloversville R. R. Co.*, 200 App. Div. 241; affd., 234 N. Y. 599; *Castle* v. *Director-General of Railroads*, 232 N. Y. 430; *Barnasky* v. *N. Y., O. & W. Ry. Co.*, 226 N. Y. 435; *Bowden* v. *Lehigh Valley R. R. Co.*, 226 N. Y. 648.)

To say, upon the record before us, that the jury was justified in finding the deceased was free from contrib-

utory negligence is, as it seems to me, to permit a finding to be based upon nothing more substantial than a mere guess or speculation. I do not believe property should be taken from one person and given to another upon any such basis.

For these reasons I vote to affirm the judgment.

CARDOZO, CRANE, ANDREWS and LEHMAN, JJ., concur with POUND, J.; McLAUGHLIN, J., reads dissenting opinion, in which HISCOCK, Ch. J., concurs.

Judgment reversed, etc.