PAULINE SHINDLER, as Administratrix, etc., of BENJAMIN SHINDLER, Deceased, Appellant, *v.* SULLIVAN COUNTY LIGHT AND POWER CORPORATION, Respondent.

Third Department, May 6, 1925.

**Gas and electricity — action to recover for death of plaintiff's intestate — primary wire of defendant carrying 2,200 volts was negligently hung above bell wire over land of intestate's father — wires came in contact — intestate threw axe at bell wire which struck bell wire and broke it twenty-five feet from place where it was struck — bell wire came in contact with intestate and he was electrocuted — intestate was not guilty of contributory negligence, as matter of law — verdict for plaintiff reinstated.**

In an action to recover for the death of plaintiff's intestate, the verdict in favor of the plaintiff which was set aside on the ground that plaintiff's intestate was guilty of contributory negligence as a matter of law, should be reinstated, since it appears that primary wires belonging to defendant, which passed over land belonging to intestate's father, were negligently hung above a bell wire belonging to intestate's father; that the wires came in contact; that intestate threw an axe at the bell wire, either for the purpose of separating the two wires or for the purpose of breaking the bell wire; that the axe struck the bell wire and that wire broke about twenty-five feet from the place where it was struck; and that the bell wire, still being in contact with the primary wires, fell on the plaintiff's intestate and electrocuted him.

Under the circumstances, it cannot be said, as a matter of law, that the intestate intended to break the wire, or that he had reasonable grounds to believe that if it did break it would break at a point twenty-five feet distant from where it was struck, and that the loose end would fall on him in the manner in which it did, but on the contrary, it may be said that the act of the intestate was one of prudence.

COCHRANE, P. J., dissents, with opinion.

APPEAL by the plaintiff, Pauline Shindler, from an order of the Supreme Court, made at the Sullivan Trial Term and entered in the office of the clerk of the county of Sullivan on the 28th day of May, 1924, vacating and setting aside the verdict of a jury for $10,000 and ordering and directing the jury to render a verdict in favor of the defendant pursuant to section 457-a of the Civil Practice Act, and directing that judgment be entered upon said verdict, dismissing the plaintiff's complaint, with costs, and also from a judgment entered in said clerk's office on the same day pursuant to said order.

*Ellsworth Baker,* for the appellant.

*Philip A. Rorty,* for the respondent.

McCANN, J.:

The only question involved on this appeal is that of contributory negligence.    Moses Shindler, father of plaintiff's intestate, Benjamin

Third Department, May, 1925. [Vol. 213

Shindler, was the owner of a farm upon which were located two large boarding houses, one of which was also used by the owner and his family as a residence. Along the public highway in front of the property the defendant had erected an electric line with wires carrying a voltage of 2,200, the electricity being furnished for power and lighting purposes in that vicinity. These wires were known as primary wires. The transformer by which the current was reduced from the primary wires to the secondary wire and from 2,200 to 110 volts was located in the rear of the yard of the two houses mentioned and about 200 feet from the highway. These primary wires with 2,200 volts passed from the main line on the highway through the yard in question between the two houses and to the transformer. The two wires passed through an apple tree. Practically at right angles to these wires there was a bell wire used for operating a call bell and running from one boarding house to the other, a distance of 102 feet. This wire passed through the same apple tree. There is a dispute as to whether the latter wire was located above or below the primary wires, the contention of the plaintiff being that the primary wires were above and were negligently placed there by the defendant. There is also a dispute as to which wire was installed first. These questions have been solved by the jury. These heavy wires were loosely hung and sagged. At one point they were eighteen and one-half feet from the ground. Between the apple tree and the transformer they hung as low as thirteen and fifteen feet. The insulation was also, to a certain extent, worn off. On the 23d day of November, 1923, during a heavy wind and rain, the primary wires and bell wire came in contact in the apple tree in question. From the verdict which has been rendered, we have the right to assume that there was negligent construction; otherwise, such contact would not have been made, and furthermore that such construction was chargeable against the defendant. On the day in question the family were together in their dwelling when their attention was called to the fact that the apple tree was on fire. The testimony as to what happened is slightly conflicting but in so far as the point at issue is concerned, there cannot be any variation which is in any way material. Upon discovering that a fire existed in the tree and realizing the seriousness of the situation as to what might result therefrom, Benjamin took an axe and threw it against the bell wire for the evident purpose of severing it or jarring it loose from the primary wires and as the result of the blow of the axe against the wire, the latter was severed at a point near where it entered the dwelling. The bell wire fell on Benjamin and electrocuted him. The testimony shows that the bell wire was struck at a

point about twenty-five feet from the dwelling which point was also approximately midway between the apple tree and the dwelling. The court charged the jury that if the plaintiff's intestate was aware of the deadly nature of the current that was in the bell wire he was guilty of contributory negligence as a matter of law and that this was true whether he threw the axe at the wire or whether he reached up and pulled it down, because, as determined by the court, no one is ever justified in placing himself in danger for the sake of saving property from destruction and that such justification only exists in the saving of human life.

The trial court based its decision on *Eckert* v. *Long Island R. R. Co.* (43 N. Y. 502) and *Morris* v. *Lake Shore & M. S. R. Co.* (148 id. 182). It is urged by the respondent that persons of mature years and ordinary intelligence are presumed to know the danger of coming in contact with an electric current. This may be conceded for the sake of the argument, but the distinction between the cases referred to and the case now before us lies in the fact that the contributory negligence of the plaintiff's intestate is not to be measured by his knowledge of the deadly character of an electric current but by his knowledge as to what extent such current existed in the bell wire and whether or not he intended to break the wire or to jar it loose from the primary wires (either of which would have accomplished his purpose) or whether if he intended to break the wire he had reason to believe that it would break at a point from twenty to twenty-five feet distant from the point where it was struck. If he positively knew that he was putting himself in a place of danger, the argument advanced by the respondent might be applicable. Would a reasonably prudent man have expected the danger which resulted from doing what he did upon this occasion? It cannot be said as a matter of law that Benjamin Shindler intended to break the wire. If he did not intend to break it or had no reasonable grounds for believing that it would break, then he was not guilty of contributory negligence. Moreover, it cannot be said as a matter of law that Benjamin Shindler had reasonable grounds to anticipate that this wire would break at a point twenty feet from where it was struck and thereby leave the loose end, which might fall on him in the manner in which it did. On the contrary, it might with much reason be argued that he knew the conditions which existed and that he showed great judgment in not reaching for the wire for the purpose of pulling it down but in purposely avoiding personal contact with it by throwing the axe at and onto the wire. The testimony shows that the wire at the point where it was struck was from eleven to fourteen feet high. The decedent's height, together with the length of his arm and the handle of the

axe shows that he could not under any circumstances have reached the wire to pull it down. Contact was necessary to create danger. His acts may well be designated as those of caution and prudence rather than of negligence. Were the acts of Benjamin Shindler those of a reasonably prudent man? Respondent's brief calls attention to many cases, all of which are beside the point in the case. A summary of the argument of the respondent is in the following language quoted from his brief: " He must have known that, if broken, it would fall, and that if it fell it was almost certain to come in contact with him; where it would break, whether at the tree, at the house, or where the axe might strike it, no one might tell. The least iota of prudence would have suggested at least getting away a sufficient distance to avoid being hit by the falling wire before throwing the axe instead of taking a place under the wire and only four or five feet away from it." This argument simply suggests questions of fact for the jury. They have already been answered. The cases cited refer to contributory negligence on the part of an individual in placing himself in a place of known and apparent danger. We have attempted to distinguish these cases by showing that it was a question of fact as to whether such danger was known or apparent or certain or uncertain.

The provisions of section 265 of the Civil Practice Act and of section 131 of the Decedent Estate Law (as added by Laws of 1920, chap. 919), placing the burden of proving contributory negligence in this case upon the defendant, make applicable the decisions in *Chamberlain* v. *Lehigh Valley R. R. Co.* (238 N. Y. 233); *Nicholson* v. *Greeley Square Hotel Co.* (227 id. 345); *Davis* v. *New York State Railways* (210 App. Div. 316), and *Seyford* v. *Southern Pacific Co.* (216 N. Y. 613). From the latter case the following is quoted: " Now that plaintiff has been relieved of the burden of proving affirmatively that his own negligence did not contribute to the accident, his case should, when he has made out a *prima facie* case of defendant's negligence, be submitted to the jury, unless it appears that the uncontradicted proof of his own negligence is so certain and convincing that no reasonable mind could reach the conclusion that he had been careful, even though a verdict in his favor would be set aside as against the weight of evidence."

The cases above mentioned have all adopted the following rule: " If any possible hypothesis based on the evidence forbids the imputation of fault to the deceased, as matter of law, the question is for the jury."

The hypotheses have already been suggested and to my mind they forbid the imputation of any negligence to the decedent.

The order appealed from should be reversed, the verdict rein-

stated, and judgment directed for the plaintiff, with costs against the defendant in all courts.

All concur, except COCHRANE, P. J., dissenting, with an opinion.

COCHRANE, P. J. (dissenting):

The only question of contributory negligence submitted to the jury was whether the deceased knew of the dangerous current in the bell wire. They were charged that if he had such knowledge plaintiff could not recover. I think he was chargeable as matter of law with such knowledge. A witness for the plaintiff testifies that six months before the accident the primary wire was on the ground " sizzling " and that the witness told the deceased that it was a high tension wire and must not be touched. This evidence is uncontradicted. Furthermore, the burning of the tree was notice to the deceased of the danger which existed. He knew that the wires were in contact and that such contact was the cause of the trouble. It seems to me that any person of ordinary intelligence must know that when a wire charged with electricity comes in contact with another wire the latter is liable to receive the current from the former. The deceased evidently knew this else he would not have attempted to sever the bell wire or to separate it from the primary wire. Therefore, on the only question of contributory negligence submitted to the jury the verdict was properly set aside. It is suggested that the deceased might have intended to jar the bell wire loose from the primary wire, but that does not seem to me to be a reasonable explanation of his purpose. It is not apparent how he could expect to separate the wires by that method. The plaintiff does not suggest such a theory, but, on the contrary, contends that the purpose of the deceased was to sever the wire, and in any event that ground of negligence was not submitted to the jury. If, as the plaintiff contends, the deceased intended to break the wire he knew it would break at its weakest point, wherever that might be, and that he was in a position where it might fall upon him and discharge into him its deadly current. There was no emergency which called for action on his part. The buildings were in no danger. They were one hundred feet apart and the tree was midway between them. I think the complaint was properly dismissed.

Order and judgment reversed on the law, and verdict reinstated and judgment directed for the plaintiff, with costs against the defendant in all courts.