## DELAWARE & HUDSON CO. v. NAHAS.

(Circuit Court of Appeals, Third Circuit. July 15, 1926. Rehearing Denied August 26, 1926.)

No. 3386.

**1. Courts ⊗⟹365—Action for tort in federal court is governed by law of state where cause of action arose, and decisions of other states are not authoritative.**

In an action in a federal court for tort committed in another state, the law of such state, when proved, governs, and while decisions in other states, having similar laws, may be persuasive, they are not authoritative.

**2. Railroads ⊗⟹324(1)—Person approaching crossing must exercise ordinary care, commensurate with danger.**

Under the law of New York, as at common law, one approaching a railroad crossing is not bound to the greatest diligence which he can exercise to avoid danger, but is bound to exercise care commensurate with the danger, such as a prudent man would ordinarily exercise for the protection of his life.

**3. Railroads ⊗⟹327(1)—One failing to use senses of seeing and hearing on approaching crossing is negligent as matter of law.**

One approaching a railroad crossing must employ his senses of seeing and hearing, and, failing to do that, is negligent as matter of law.

**4. Railroads ⊗⟹327(1)—Person approaching crossing, who fails to look, or looking, does not see what is plainly visible, is chargeable with contributory negligence as matter of law.**

One approaching a railroad crossing must look in the direction the track runs, though that involves turning and looking directly backward. He must look where he can see, and listen where by listening he can hear; but it is not sufficient that he looked, but did not see. If there was a clear view of an approaching train, and a plaintiff either failed to look, or, looking, did not see it, he is chargeable with contributory negligence as matter of law, and is not entitled to have that question go to the jury.

**5. Railroads ⊗⟹346(5).**

Under law of New York, in action for injury at railroad crossing, as distinguished from actions for death, plaintiff must affirmatively show freedom from contributory negligence.

**6. Railroads ⊗⟹350(7).**

Under law of New York, railroad is bound to give some notice or warning of train approaching crossing, and what is sufficient warning is for jury.

**7. Railroads ⊗⟹313—Violation of penal statute, by failure to give warning at crossing may be evidence of negligence in civil action (Penal Law N. Y. § 1985).**

Penal Law N. Y. § 1985, making failure to sound the whistle and ring the bell on approaching a crossing a penal offense, does not impose on railroad the duty to ring the bell and blow the whistle as a warning to persons on a highway, but failure to do so may be evidence of negligence in an action for injury at a crossing.

**8. Railroads ⊗⟹350(16)—Contributory negligence of driver of truck, struck on crossing, held question for jury.**

Plaintiff, driving a truck weighing, with its load, 10 tons, approached a crossing, with which he was unfamiliar, at an acute angle. His view to the rear, from which direction a train was approaching at 45 miles an hour, was more or less obstructed until within 29 feet of the crossing. He slowed down 300 feet from the crossing, as required by statute, and, when the front of his truck was 6 feet from the nearest rail of the double track, stopped and looked in both directions, but saw no train and proceeded at slow speed. When he reached the first rail of the second track, he first saw the train and increased his speed, but was unable to get clear. *Held* that, in view of all the factors entering into the situation, the question of his contributory negligence was for the jury.

**9. Trial ⊗⟹211.**

Refusal to charge that failure of party to produce available evidence justified inference that it would be unfavorable to him *held* within court's discretion, and not error.

**10. Appeal and error ⊗⟹273(5).**

In federal trial courts, general exception to a charge cannot of right be asked, and, when granted, is not recognized by appellate court.

Buffington, Circuit Judge, dissenting.

In Error to the District Court of the United States for the Eastern District of Pennsylvania; Oliver B. Dickinson, Judge.

Action at law by Edward Nahas against the Delaware & Hudson Company. Judgment for plaintiff, and defendant brings error. Affirmed.

John Lewis Evans, of Philadelphia, Pa., and Paul Bedford, of Wilkes-Barre, Pa., for plaintiff in error.

Harry A. Mackey and George C. Klauder, both of Philadelphia, Pa., and Henry Houck, of Shenandoah, Pa., for defendant in error.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

WOOLLEY, Circuit Judge. Speaking of the parties as they stand on the record, the plaintiff brought this action in the District Court of the United States for the Eastern District of Pennsylvania to recover dam-

ages from the defendant for personal injuries he had sustained at a grade-crossing on the line of the defendant's railroad extending from Albany to Binghampton in the State of New York. The plaintiff had a verdict. To the judgment that followed, the defendant has directed this writ, charging many errors in the trial and raising for review many questions, the main one being whether, on a motion for a directed verdict, the court erred in refusing to hold, as matter of law, that the plaintiff was guilty of contributory negligence.

[1] The answer to this question must be found by a process somewhat unusual, for, aside from considering the facts, we must determine what is the applicable law. The accident happened in the State of New York. If a tort was involved, it was committed in New York. Obviously, therefore, the plaintiff's right of action and the defendant's liability depend on the law of that state, and to invoke the law of that state—distant from the trial forum—it must be proved as a fact. This was done. When proved, that law governed the case. Conceding this, the defendant, however, urged that: "The presumption is that the law of a foreign state is the same as (that of) the State of Pennsylvania and the Pennsylvania Courts will apply their own law unless the law of a foreign state is proved to be different." The defendant then maintained that the law of Pennsylvania, with one exception not here involved, is the same as that of New York, and proceeded to argue the case mainly, and insistently, on Pennsylvania law as announced by Pennsylvania courts in many cases. In order to clear this phase of the discussion, we shall merely say that the case at bar concerns a New York tort, not a Pennsylvania tort; that it was tried not in a Pennsylvania court but in a federal court; that when, as here, a case is one where state law, not federal law, is to be followed and the law of the state has been proved, that law governs the case. Cases from courts of another state bearing on like law may be persuasive; they are not authoritative.

The law of New York applicable to this case, as put in evidence, may be summarized as follows:

[2-4] The law of New York imposes on a person approaching or crossing a railroad track an obligation to exercise reasonable care in view of all the circumstances and recognizes that such care varies with the circumstances. In this it follows the common law. One approaching or crossing a railroad track is not bound to the greatest dili-

gence which he can exercise to avoid danger but he is bound to exercise care commensurate with the danger, such as a prudent man approaching such a place would ordinarily exercise for the protection of his life. Kellogg v. N. Y. C. & H. R. R. Co., 79 N. Y. 72. In exercising care he must employ his senses of seeing and hearing. Failing to do that, he is negligent as matter of law. Dolan v. D. & H. Canal Co., 71 N. Y. 285; Totten v. Phipps, 52 N. Y. 354. He must look in the direction the track runs even though this involve turning and looking directly backward. Chamberlain v. Lehigh Valley R. Co., 205 App. Div. 391, 199 N. Y. S. 708; 238 N. Y. 233, 144 N. E. 512. He must look where he can see and must listen where, by listening, he can hear. Cassidy v. Fonda, 200 App. Div. 241, 193 N. Y. S. 275; Id., 234 N. Y. 599, 138 N. E. 462; Barry v. Rutland R., 203 App. Div. 287, 197 N. Y. S. 432; Id., 236 N. Y. 549, 142 N. E. 279; Fejdowski v. D. & H. Canal Co., 168 N. Y. 500, 61 N. E. 888. It is, however, not sufficient that the plaintiff looked but did not see. "Such a statement is incredible as a matter of law." Matter of Harriot, 145 N. Y. 540, 40 N. E. 246. While under general rule it is the province of the jury to determine whether such care has been exercised, it is also a rule that where there is a clear view of the approaching train and where the plaintiff either looked and did not see, or failed to look, he is, as matter of law, guilty of contributory negligence and not entitled to have that question go to the jury. Dolfini v. Erie R. Co., 178 N. Y. 1, 70 N. E. 68; Hagglund v. Erie R. Co., 210 N. Y. 46, 103 N. E. 770; LeGoy v. Railroad, 231 N. Y. 191, 131 N. E. 886. The statutory law (Laws of 1919, Chapter 438) differs from the general law in the one respect that a driver must "slow down" his vehicle at three hundred feet from a crossing. To what speed, it does not state. He is not bound as matter of law to stop before crossing. Kellogg v. N. Y. C. & H. R. R. Co., 79 N. Y. 72; Horton v. N. Y. C. R. R. Co., 237 N. Y. 38, 142 N. E. 345.

[5] And finally, in actions for injury as distinguished from actions for death, contributory negligence is not a defense to be raised by the defendant. Quite opposed to general rule, the plaintiff must affirmatively show his freedom from contributory negligence. Chamberlain v. Lehigh Valley R. Co., 238 N. Y. 233, 144 N. E. 512.

[6, 7] Coming to the railroads, the Penal Law of New York (Consol. Laws, c. 40), by Section 1985, prescribes that an "engineer, driving a locomotive on any railroad in this

state, who fails to ring the bell, or sound the whistle, * * * at least 80 rods from any place where such railway crosses a traveled road * * * on the same level * * * or [fails] to continue the ringing of such bell or sounding such whistle at intervals, until such locomotive * * * shall have completely crossed such road * * * is guilty of a misdemeanor." This statute, being penal in character, does not impose on railroads the duty of giving the prescribed warning. Vandewater v. New York & New England R. Co., 135 N. Y. 583, 32 N. E. 636, 18 L. R. A. 771. A railroad's duty is that imposed by general law, namely, "to warn persons who may be passing, whether on foot or in team, of the approach of trains." Dyer v. Erie Co., 71 N. Y. 228, 230. In other words, a railroad is bound to give some notice or warning of a train approaching a crossing and what is sufficient warning is a question of fact for the jury. The law does not lay down any criterion other than that of due care in operating the train in all the circumstances. Failure to ring the bell or blow the whistle may, however, be evidence of negligence. Vandewater v. New York & New England R. Co., 135 N. Y. 583, 32 N. E. 636, 18 L. R. A. 771.

[8] On the issue of the defendant's negligence it is conceded that the testimony, though in sharp conflict, was sufficient to justify submission to the jury. On the issue of the plaintiff's contributory negligence the evidence of physical facts was not disputed. This issue, when raised on the motion for a directed verdict, turned on the inferences properly to be drawn by the court, as matters of law, from the plaintiff's conduct in connection with the physical conditions.

Shortly stated, the facts, either not disputed or established by the verdict, are these:

The defendant's two-track railroad, at the point in question, ran northeast and southwest and was crossed at grade by a state highway running almost exactly east and west—forming with the tracks on the right an acute angle of 40 degrees. Here was a dangerous X crossing, familiar to motorists, with the narrow angle on the side whence the train came. The tracks ran straight for a distance of 3,385 feet, with semiphores at 1,174 feet and a whistling post at 1,450 feet north of the crossing. View from the highway up the tracks was obstructed at different places by buildings and trees, being completely obstructed at 494 feet from the crossing, still obstructed at 302 feet, somewhat obstructed at 202 feet. The view pro-

gressively extended as the obstructions progressively decreased at 179, 106, 76, 54 feet and cleared at 29 feet from the crossing permitting a view up the tracks at least beyond the semiphores. The crossing was rough and was reached from the highway on an upgrade.

The plaintiff, seated with a companion in a four-man cab of a left-hand drive truck, 28 feet long and 6 feet wide, weighing five tons and carrying a five-ton load, was driving on the highway toward the crossing. He was a stranger to the place. Observing a railroad sign 300 feet from the tracks, he slowed down to 5 miles an hour and, proceeding still more slowly, stopped with the front end of the truck 6 feet from the nearest rail of the first track. From his position in the cab 7 feet back from the front, or 13 feet from the nearest rail, he listened and heard nothing. He looked to the left along the rail side of the obtuse angle, which from his left-hand position in the cab was easy, and saw nothing. He looked to the right backwardly along the rail side of the acute angle, which from his position was difficult, stating that his view was clear for about 500 feet, beyond which point it was obstructed by a tree later shown to be 300 feet distant and 8 feet outside the right of way, and saw nothing. Whether he first looked to the left or to the right does not appear. It does appear that he looked in both directions. Seeing no train coming from either direction, he put the truck in low gear and moved across the tracks at about 2 miles an hour, estimating that from the time he started until he was hit was about 2 minutes. When he came to the first rail of the second track he saw the train coming from the north at a speed later estimated at 45 miles an hour. Quickly shifting to second gear he increased the speed of the truck, but, as it happened, not enough to avoid the collision which followed. He testified that the only whistle he heard was that sounded at the time of the crash.

The defendant bases its whole argument in support of its charge that the plaintiff was guilty of contributory negligence on what it terms the uncontrovertible physical fact that the tree, 300 feet away, did not obstruct the plaintiff's view up the tracks until it reached a point some distance beyond the semiphores and on the inference which it regards as inevitable that he did not look, or, looking, he did not see the train which, by a calculation based on the speed of the truck and the speed of the train, was in sight at the time he said he looked. In other words,

it maintains that the plaintiff, if he looked, did not make a "seeing" look which the law required of him.

If the physical facts of the distance of the tree from the crossing and the distance of the plaintiff from the crossing when he stopped together with fixed and determined speeds at which truck and train were moving were all the factors in the case, we might yield to the defendant's arithmetical argument. But they are not all the factors. Others are these: The plaintiff was bound to look in both directions, and this he did. But the law does not prescribe which way he should look first. If he looked first to the right, the train was farther away than when, after looking to the left, he started across the tracks. It might, conceivably have been out of sight, depending on the time he consumed in looking to the left. At all events while he was looking to the left, if in fact he looked to the left last, the train was rapidly approaching. Another factor, variable in character, is the time the plaintiff took, after looking in both directions, in releasing the brakes and starting the truck. This time was not testified to and, like other factors, it is not included in the defendant's calculation. Yet it was some period of time, measured, perhaps, in seconds. Here again the train, during this time, was rushing toward the crossing at 66 feet a second. Still another factor is the speed of the truck at two miles an hour, which the defendant calculates is the speed sustained from the start to the instant of collision, estimated at about 18 seconds. Yet it is evident to anyone familiar with motor engines that a truck, weighing with its load 10 tons, cannot be started at that speed. In making a standing start its speed at first must have been next to nothing. How much time it consumed—reckoned in seconds—in picking up speed to the rate of 2 miles an hour no one knows. But some time was thus consumed during which the train was coming on. Still again, another unknown factor is how much was the speed increased—measured by seconds or fractions thereof—when the plaintiff shifted from low gear to second just before the collision. It was something—very little, no doubt—but as the defendant's calculation is based on seconds it cannot be ignored. Taking any or all of these unknown factors which happened at the crossing after the plaintiff looked, showing inevitably that the train was farther away when the plaintiff looked than it was when they occurred, we can not say the learned trial judge should have held, as matter of law, that the train was in sight when the plaintiff looked. Moreover, when the defendant's attorney asked the plaintiff, "How long a time do you think it was from the time you started your truck until you were hit," and when in connection with that question he pressed him for a short estimate by asking him if it was "about two seconds," the plaintiff replied that it was "about two minutes." If that answer were taken literally and not as a broad estimate made in contrast to the impossible time pressed upon him by the attorney, the train, moving at 45 miles an hour, was more than 7,000 feet away and, not yet having rounded the curve, was not in sight when the plaintiff looked.

We have engaged in this discussion at some length for the purpose of showing, not that by some calculation the plaintiff could not have seen the train, but that any calculation based on so many variable factors which entered into the situation might produce a wrong result. Indeed, as the learned trial judge aptly said, the evidence could be so used as to demonstrate mathematically that the accident never happened.

Manifestly it was for the jury to take the testimony, reconcile it if they could, believe or disbelieve such parts of it as they chose, and arrive at the truth, and from the truth determine whether the plaintiff exercised proper care. This included whether in the circumstances he should have looked again. Carr v. Penn. R. Co., 225 N. Y. 44, 121 N. E. 473. Of course the trial judge had no such power. He had to take the testimony as it was given and when he found it susceptible of such opposite inferences as reasonable men in the exercise of impartial judgment might entertain, he was required, on the reasoning pursued by this court in Atlantic City Railroad Co. v. Smith (C. C. A.) 12 F.(2d) 658, to submit the case to the jury. In doing so, he committed no error.

The remaining assignments point to specific errors in the charge. We shall dispose of them briefly, being careful to distinguish between matters in the charge assigned as error and discussion in the opinion rendered by the court when refusing the motion for a new trial, caustically criticized by the defendant in its brief. The court's action in refusing a new trial is, of course, not matter for review on writ of error and any statements then made, not having been made to the jury, had no bearing on the verdict and judgment.

In instructing the jury—quite correctly, we think—on the duty of the railroad company under New York law to give warning, the learned trial judge adverted to the quoted Penal Statute for purposes of illustration,

carefully distinguishing between the duty imposed by that statute on the engineer and the duty imposed by general law on the railroad. Looking at the expression superficially, we discern no error. From the judge's opinion disposing of the motion for a new trial, however, we find there lay beneath the surface the true reason for the expression, which was a desire on the part of the judge, in the interest of justice, to protect the defendant from reference to the statute made during the trial.

In charging the New York law on the duty of the wayfarer to exercise care for his own protection the learned trial judge, conscious that he was addressing a jury composed entirely of Pennsylvanians, who, doubtless, knew the Pennsylvania rule of "stop, look and listen," referred to that rule, obviously for the purpose of avoiding confusion in the mind and action of the jury, and showed them the difference between it and the applicable New York rule which did not contain an arbitrary command to stop. In this, and otherwise in his statement of the law, we fail to find error.

The allusion made by the trial judge to the characteristics of Pennsylvania Dutch in speaking and his reference to the physicists' theory of sound—whether sound is vibrations in the air or their detonation on the ear— were, at most, harmless digressions. Neither in them nor in the subject-matter to which they were addressed do we find error.

Next, the defendant says that the court in its charge, when making two of the many mathematical calculations with which the trial was replete, made miscalculations. If that is true, it was a good illustration of the unwisdom of pursuing this method of trial in the circumstances. Yet what the court did was not to bind the jury by its figures but merely to indulge in an illustration which, if it involved inaccuracies, could be, and doubtless was, corrected by the jury in whose hands alone the facts reposed.

One of the issues of fact was whether the truck stopped before crossing. The plaintiff said it did. A number of witnesses for the defendant scattered around the premises said it did not. Adverting to the testimony of the latter the court, clearly within its right and, indeed, within its duty, told the jury how they should weigh the testimony of these witnesses, that is, according to their position in respect to the moving vehicle and according to their opportunity accurately to see and relate what happened. No error.

[9] The defendant requested the court to charge the jury on the effect of the plaintiff's failure to produce available evidence—that of his companion in the truck at the time of the accident, his surveyors, photographer, investigator and plans. The court's refusal is assigned as error under authority of Hall v. Vanderpool, 156 Pa. 152, 26 A. 1069, and Green v. Brooke, 215 Pa. 492, 64 A. 672, in which the Supreme Court of Pennsylvania held that where evidence is within the control of the party whose interest it would naturally be to produce it and he fails to do so, the jury may draw an inference that it would be unfavorable to him. Our comment on this assignment is threefold: (1) This is a state rule of procedure not binding on federal courts which have their own rules of procedure; (2) the evidence was equally available to the defendant; and (3) the better rule is that, the reasons for non-production of evidence being so many and various, comment thereon should be within the discretion of the trial judge who is in a far better position to determine the occasion for it, and his action in that regard is not ground for reversal unless he has abused his discretion. Collins v. Leafy, 124 Pa. 203, 16 A. 765. No error.

The evidence did not, in our opinion, justify the instruction asked by the defendant under the "false in one, false in all" rule. Corrigan v. Traction Co., 225 Pa. 560, 74 A. 420; Alexander v. Buckwalter, 17 Pa. Super. Ct. 128, 142.

[10] And finally, under a general exception the defendant urges that the charge was inadequate and unduly favorable to the plaintiff and prejudicial to the defendant. In the federal trial courts of this circuit a general exception to a charge cannot of right be asked and when granted it is not recognized by this court on review. Aside from the invalidity of the assignment raising this question, we say that, in our opinion, the charge was adequate and was fair to both parties.

The judgment below is affirmed.

BUFFINGTON, Circuit Judge (dissenting). I agree with the admirable statement of the law in this opinion. I differ in its application to the facts of the case, and therefore record my dissent.

Under the law of New York, as stated in the court's opinion, the burden was on this plaintiff to affirmatively show his freedom from contributory negligence. Contributory negligence being that lack of care which contributed to the accident, and the presence of this truck on the track when it was struck being the cause of this accident. I inquire whether the plaintiff has shown affirmatively, as he is bound to do, that his presence on the

track at that time, was not due to lack of care on his part. To my mind, it clearly was. The young driver was attempting to drive a slow-moving, heavily loaded truck up a grade and across tracks where track vision was restricted. With the work of managing the truck on his hands, with his restricted range of vision, he had a very difficult, individual task, and a situation where, as the event proved, he was trusting to chance and not to vision for his safe passage. Assuming he, personally, did all he could, the question still remains: Has he affirmatively shown that he used due care under the circumstances of the situation? He had beside him on the seat a young companion, who had accompanied him on the trip. He had a right, and an obligation, to avail himself of the vision of the man beside him, of his watchfulness, and of sending this companion across the tracks to signal a safe passage for his truck—a common and universal safety precaution, which the conductor of a street car takes time to do. Had the plaintiff done so, it is clear this accident would not have happened, and because he has not shown that he availed himself, in any way, of the helpful aid of his companion, and bearing in mind his affirmative duty, under the law, to show his freedom from contributory negligence, I feel that he has not only failed to do so, but that his failure to avail himself of the means of safety he had on the truck, beside him, in his fellow-passenger, affirmatively shows such lack of due care, under the circumstances, that if this heavily-loaded truck had wrecked the train and killed the passengers, as it might well have done, he would have rightly been held responsible for criminal negligence.

Taking the whole situation in view, I think the trial judge had before him a situation where there can be no doubt that the contributing cause of this accident was the heedless, careless indifference to danger of this young driver and his companion. For these reasons, I record my dissent.