**Barnet SHOIFET, Plaintiff-Appellee,**

v.

**NEW YORK CENTRAL RAILROAD COMPANY, Defendant-Appellant.**

**No. 203, Docket 25297.**

United States Court of Appeals Second Circuit.

Argued Jan. 14, 1959.

Decided March 31, 1959.

Jack Steinman, New York City (William E. J. Connor, Hudson, N. Y., on the brief), for plaintiff-appellee.

C. Austin White, New York City (Gerald E. Dwyer and Thomas J. Smith, New York City, on the brief), for defendant-appellant.

Before MEDINA, LUMBARD and BURGER,* Circuit Judges.

MEDINA, Circuit Judge.

In this grade-crossing accident case The New York Central Railroad Company's appeal presents a single question of law, properly raised at the trial by a variety of motions: Was appellee guilty of contributory negligence as a matter of law?

As federal jurisdiction is based on diversity of citizenship, and the accident occurred in New York, the substantive aspects of the case are governed by New York law. See Klaxon Co. v. Stentor Electric Mfg. Co., 1941, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477; Guaranty Trust Co. v. York, 1945, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079; Continental Can Co. v. Horton, 8 Cir., 1957, 250 F.2d 637; and Poplar v. Bourjois, Inc., 1948, 298 N.Y. 62, 80 N.E.2d 334; Benton v. Safe Deposit Bank, 1931, 255 N.Y. 260, 174 N.E. 648; Fitzpatrick v. International Ry. Co., 1929, 252 N.Y. 127, 169 N.E. 112, 68 A.L.R. 801.

On November 21, 1956 appellee Barnet Shoifet, a 72-year old cattle-dealer was driving alone in his 1948 Chevrolet pickup truck along Route 343 bound for Amenia, New York, from his home in Sharon, Connecticut. He had driven his car in this same locality many times before. At about 9:10 A.M. a New York Central train, on its single track Harlem Division, struck Shoifet's truck at a crossing. The direction of the truck was about due West and that of the train Southwest.

There was evidence from which the jury was justified in concluding that the crossing, otherwise unguarded, was protected by flashing red lights or blinkers,

* Sitting by designation pursuant to 28 U.S. C.A. § 291(a).

and that these blinkers were not operating at the time of the accident, despite the presence of the on-coming train. Nor was there any other warning of the approach of the train; no bell was rung; no whistle was blown. The train was proceeding at a "pretty fast" rate of speed, estimated by the engineer and the fireman to be about sixty miles an hour.

■ Shoifet was going about 30 miles an hour in his truck as he approached the crossing. He slowed down considerably, and from conflicting testimony the jury may have inferred that he did not stop. The applicable New York law did not require him to stop. See Judson v. Central Vermont R. Co., 1899, 158 N.Y. 597, 53 N.E. 514. The road and the railroad track converge at an angle of approximately 20 degrees. Thus the view of the track on which the train was moving was more backwards than sideways from the driver's seat; and, after coming through a cut, the train was visible for a distance of about 900 feet. But the exhibits and the testimony indicate that this distance cannot be taken absolutely. It was only when the truck had passed a point about 350 feet from the crossing that the train could be seen 900 feet away, and there was expert testimony that a driver, who had to watch where he was going on the road, could only see from his driver's seat "a train practically the same distance from the crossing (as) he was," and that it would have taken the train 9.7 seconds to traverse this 900 feet. The jury could have reasonably concluded, however, that the train was going faster than appellant's employees admitted. See Noseworthy v. City of New York, 1948, 298 N.Y. 76, 80 N.E.2d 744.

■ It was broad daylight at the time of the accident, although a slight drizzle might have somewhat interfered with Shoifet's view. While badly injured he survived and testified that his sight and hearing were good despite his age and that he "looked around" in all directions and listened to ascertain if a train was coming before attempting to cross the track. There was nothing in the back of the truck behind the driver's cab to obstruct or impede Shoifet's vision. It is on the basis of his testimony that he looked and did not see the train that we are asked to rule that he was guilty of contributory negligence as a matter of law, and to reverse the judgment and dismiss the complaint. The burden of the argument is, and must be, that this testimony is incredible on its face, because it is claimed that no reasonably prudent person could have looked, not seen the train and yet been hit by it.

We see no reason to doubt that on the facts as above summarized the controlling rule of law is the one frequently formulated by the New York Court of Appeals in wrongful death actions arising out of railroad crossing accidents, that contributory negligence is an issue for the jury, if there is "any possible hypothesis on the evidence that will support the conclusion that due care was exercised." See Chamberlain v. Lehigh Valley R. Co., 1924, 238 N.Y. 233, 144 N.E. 512; Flynn v. Long Island R. Co., 1942, 289 N.Y. 283, 45 N.E.2d 445; Nicholson v. Greeley Square Hotel Co., 1919, 227 N.Y. 345, 349, 125 N.E. 541, 543; and Crough v. New York Central R. Co., 1932, 260 N.Y. 227, 183 N.E. 372. Indeed, as we are not here concerned with any question of burden of proof, this is only another way of saying that all questions of credibility, sifting of the evidence and drawing inferences therefrom must be assumed to have been decided in Shoifet's favor. See Gunning v. Cooley, 1930, 281 U.S. 90, 94, 50 S.Ct. 231, 74 L.Ed. 720; Baltimore & Ohio R. Co. v. Groeger, 1925, 266 U.S. 521, 527, 45 S.Ct. 169, 69 L.Ed. 419; Greany v. Long Island R. Co., 1886, 101 N.Y. 419, 423, 5 N.E. 425, 426.

It was for the jury to determine what were the relative speeds of the truck and the train and also to determine how far away the train was at the various times Shoifet said he looked. As he slowly approached the crossing and looked to the right, before he looked to the left, it is too plain for reasonable debate that the train might have been beyond the cut and obscured from sight. Moreover, in view

of the fact that the blinkers were not functioning and he knew that they were placed there to warn of the approach of trains, together with the absence of any bell or whistle, we think a jury might reasonably have concluded that a prudent person would do no more than look from the driver's seat through the right-hand window of the truck, without shifting his seat or straining to look backwards. Had the jury reasoned in this fashion, they might well have concluded that the train was only 300 or 400 or 500 feet away when he first looked to the right but that it still was not within Shoifet's vision. The speeding train thus could within 4 or 5 seconds have come upon the unsuspecting Shoifet before the latter realized his danger.

Another and very likely hypothesis is that when Shoifet first looked to the right the train had not yet come out of the cut, but that in the time it took him to watch the road ahead, look to the left, and then again to the right the train had reached a point less than 900 feet away, but still not within his vision, as his last look was merely confirmatory and hence he did not strain to see the full distance over his right shoulder and backwards to the cut. The jury, on this hypothesis, may well have concluded that Shoifet was, under the circumstances, entitled to some degree to relax his vigilance. See Flynn v. Long Island R. Co., supra, 289 N.Y. 283, 286, 45 N.E.2d 445, 446; Nicholson v. Greeley Square Hotel Co., supra, 227 N.Y. 345, 349, 125 N.E. 541, 543; Carr v. Pennsylvania R. Co., 1918, 225 N.Y. 44, 47, 121 N.E. 473, 474. In any event, as he slowed down when he neared the crossing and kept "looking around," he could see less and less distance down the track with his normal line of sight through the right-hand window of the truck. Thus we have not one but many hypotheses to support a jury finding that due care was exercised in this case, and none of these hypotheses lacks rationality or probability.

Indeed the facts here are strikingly similar to those in Chamberlain v. Lehigh Valley R. Co., supra, 238 N.Y. 233, 144 N.E. 512. There the road and track were parallel except at the crossing. Plaintiff's intestate's truck was proceeding at 8 miles an hour, the train at 45 miles an hour. The view of the track was obstructed until the decedent was 105 feet from the track, giving the decedent about 9 seconds to see the track. The train could be seen from 600 feet away which meant that it could be seen for nine seconds before it reached the crossing. The New York Court of Appeals held that the question of contributory negligence was for the jury, stating at page 237 of 238 N.Y., at page 513 of 144 N.E.:

"With one pair of eyes one cannot look in two directions at the same time. The duty of deceased was to look in both directions, keep control of his car, and negotiate it across the tracks. If he had looked in the direction of the approaching train 10 seconds before the accident, the jury might have said that he would have seen nothing and heard nothing to warn him of the approaching danger."

Cases abound which demonstrate the New York attitude on this subject and we cite only a few more as further illustrations. Guido v. Delaware, Lackawanna & Western R. Co., 1958, 4 N.Y.2d 981, 177 N.Y.S.2d 503, 152 N.E.2d 527; Cabri v. Long Island R. Co., 1954, 306 N.Y. 765, 118 N.E.2d 475; Latourelle v. New York Central R. Co., 1950, 301 N.Y. 103, 92 N.E.2d 911; Paley v. New York Central R. Co., 1948, 297 N.Y. 1017, 80 N.E.2d 537; Flynn v. Long Island R. Co., 1942, 289 N.Y. 283, 45 N.E.2d 445; Bond v. Schenectady Ry. Co., 1929, 251 N.Y. 315, 167 N.E. 455; Carr v. Pennsylvania R. Co., 1918, 225 N.Y. 44, 121 N.E. 473; Mullen v. Schenectady Ry. Co., 1915, 214 N.Y. 300, 108 N.E. 412; Greany v. Long Island R. Co., 1886, 101 N.Y. 419, 5 N.E. 425.

Appellant's reliance upon cases like Wadsworth v. Delaware, L. & W. R. Co., 1947, 296 N.Y. 206, 71 N.E.2d 868; Crough v. New York Central R. Co., 1932, 260 N.Y. 227, 183 N.E. 372; Schrader v. New York, C. & St. L. R. Co., 1930,

254 N.Y. 148, 172 N.E. 272; Fitch v. New York Central R. Co., 1922, 233 N.Y. 356, 135 N.E. 598; Hagglund v. Erie R. Co., 1913, 210 N.Y. 46, 103 N.E. 770, is misplaced. Factors such as right angle intersections, plainly unobstructed views and various other circumstances suggesting a total lack of any care whatsoever are commonly found. In none of these cases do we find any basis in the facts for an inference or hypothesis consistent with the exercise of reasonable prudence by the injured person who was struck by the train.

Affirmed.