FRED MILLER, Respondent, *v.* THE NEW YORK CENTRAL RAILROAD
COMPANY, Appellant.

Third Department, May 15, 1929.

*Whalen, Murphy, McNamee & Creble* [*Sherman A. Murphy* of
counsel], for the appellant.

*Harry W. Williams*, for the respondent.

VAN KIRK, P. J. Plaintiff has a judgment in a negligence action. Defendant asks a reversal solely upon the ground of contributory negligence. As to all disputed facts we take plaintiff's version.

While driving over a grade crossing of defendant's tracks plaintiff's automobile and a train came into collision; plaintiff received serious injuries. The time was about seven A. M., of a clear, bright June day. The plaintiff was driving easterly on a private road; the train came from the south. The private road leads from a highway west of the crossing to a manufacturing plant a half mile east thereof. When about 125 feet from the tracks this private road turns from a northerly to an easterly direction and runs thence in a straight course to and over the grade crossing. The surface of the road was dirt, dressed over with crushed stone, and on this morning was dry. From the curve just mentioned there is a down grade toward the crossing, varying from eight per cent to five per cent; as one approaches the tracks the grade diminishes. There was no noticeable irregularity or roughness in the surface of the road or of the crossing, nor was there any other passing vehicle, or sound, or thing, to divert his attention, or anything to cause him to hasten on his way. He approached the crossing undisturbed and with his attention undiverted. The photographs taken two days after the accident, defendant's Exhibits E and G, show the crossing from opposite directions.

The railroad line consisted at the crossing of three separate tracks, with the usual spaces between. As one approached from the west, he first came to a side track, then to the south-bound track, then to the north-bound track on which plaintiff was injured. The distance from the westerly rail of the north-bound track to the westerly rail of the side track is twenty-five feet. In either direction from the crossing the tracks are straight and of level grade to the north about 1,000 feet and to the south more than one mile.

After one left the highway and traveled toward the crossing on the private road there were places where the view of the railroad tracks in either direction was open and other places where it was obstructed. The condition essential to the determination here is that existing between the above-mentioned curve and the crossing. Within this curve and to the south was a bunk house which obstructed the view. Having passed this, for a short space one could see the tracks in both directions, but thenceforward, for a distance of seventy feet or more, the side of a cut entirely shut off the view to the south.

With the conditions and surroundings above described the

plaintiff approached this crossing. The crossing and the surface of the roadway on either side of the crossing were in his plain view. As he went down the grade he slowed from fifteen miles an hour to twelve or thirteen; he heard no bell and no whistle; he could not see the tracks to the south until he had reached the foot of the grade, a point about five or six feet from the west rail of the side track. From that point for thirty feet he had an open, unobstructed view of the tracks in each direction. When at this point, this train, coming from the south, was in plain view. At the highest rate of speed estimated, sixty miles per hour, the train went but five times as fast as plaintiff. Plaintiff says that at this point he looked in both directions and saw no train; yet this train was then within two hundred feet from him. There is no complaint that his eyesight was not good. Had he looked he must have seen. There were warnings as he approached the crossing, but he needed none. He was familiar with it; he had been working at the cement plant four or five days immediately preceding his accident and passed over this crossing at least twice a day. There is nothing to indicate he was not a man of average intelligence and no excuse of any kind is presented for his failure to see this approaching train and his failure to protect himself from the injury. The rule is that, as one approaches a railroad crossing, of which he has knowledge, he must reduce his speed to a limit which is reasonably safe under the circumstances and conditions and proceed then cautiously and carefully with the vehicle under complete control; and he must employ his senses of hearing and sight to avoid danger. (*Horton* v. *N. Y. Central R. R. Co.*, 237 N. Y. 38, 47.) If he does not do so, he is guilty of negligence as a matter of law. (Id.; *Dolan* v. *D. & H. Canal Co.*, 71 N. Y. 285; *Avery* v. *New York, O. & W. R. Co.*, 205 id. 502, 507.) Every understanding mind knows that a railroad track is a dangerous place. A fast moving, heavy train cannot be stopped quickly to avoid collision when some object suddenly appears on or near the track; it cannot be diverted from its course on the rails. If a man attempts to pass ahead of such a train, when he has not time and space to clear the track, he knows he will be hit. If one, when a considerable distance from a crossing and thence onward until he reaches it, has a continuous unobstructed view of the tracks, he is in a very different position from that of one whose view has been wholly obstructed until he is close to the tracks. The intervals in which plaintiff's testimony indicates this train could be seen as he passed along this private roadway could give little assurance that a train was or was not approaching. Thus, when he came from behind the obstruction to his view and to a point where he could see clearly, it was his duty to proceed

slowly enough so that he could deliberately look and assure himself that a train was not then within dangerous proximity. He then had his safety solely in his own hands. It is not suggested that he had any occasion for hurry. It was not necessary for him to continue going at twelve miles an hour. A delay of one second would have protected him against collision. Whose fault, other than his, occasioned it? On what suspicion from the evidence could a jury say that he had exercised the reasonable care of a man of average intelligence to avoid his injury? The fact that he had heard no signal does not excuse him. He is not only to listen, but to look; and he must look at a time and place when looking will be of service. Hearing is an indifferent guard to safety as one approaches a grade crossing.

We think the rule is well established in this State that when a man, approaching a railroad grade crossing with which he is acquainted, passes from behind an obstruction which has cut off his view of the tracks in either direction from the crossing, he is not at liberty to continue across those tracks into that narrow place of danger without giving himself reasonable opportunity to see whether or not a train is approaching within a distance which threatens a collision. (*Keller* v. *Erie R. R. Co.*, 183 N. Y. 67; *Cassidy* v. *Fonda, J. & G. R. R. Co.*, 200 App. Div. 241; affd., 234 N. Y. 599; *Barry* v. *Rutland R. R. Co.*, 203 App. Div. 287; affd., 236 N. Y. 549; *McCullough* v. *Pennsylvania R. R. Co.*, 224 id. 541; *Barnasky* v. *N. Y., O. & W. R. Co.*, 226 id. 435; *Raymer* v. *Rutland R. R. Co.*, 204 App. Div. 135, 137.) The Federal courts have gone further. (*Baltimore & Ohio R. R. Co.* v. *Goodman*, 275 U. S. 66.)

While generally contributory negligence in a grade crossing case presents a question for the jury, the rule governing a nonsuit or dismissal of the complaint is the same as in any negligence case. (We do not refer to the statutory action. Civ. Prac. Act, § 265.) There must be some evidence to support a finding that plaintiff's negligence did not contribute to the accident, else there can be no recovery. In the present case plaintiff, having his safety completely in his own control, left his place of safety and, without using the precautions which the rules require and ordinary prudence suggests, entered upon a place of known danger. He had plenty of time to look. It was a right angle crossing, rendering it equally convenient to look in either direction. The view to the north had not been obstructed for some distance; he was free to look south as soon as he came out of the cut. He was going at twelve miles an hour; he could have slowed down to five or six. He had no occasion to hurry and nothing to divert his

attention from an approaching train. He challenged fortune and intrusted his safety to chance. We think but one conclusion can be drawn; without his negligence his injury would not have been sustained.

The judgment should be reversed and the complaint dismissed, with costs.

HINMAN and HASBROUCK, JJ., concur; DAVIS, J., dissents, with an opinion in which HILL, J., concurs.

DAVIS, J. (dissenting). As I view it, this is the ordinary highway crossing case where, by reason of the obstructed view of the traveler, the question of the exercise of due care on his part becomes one of fact.

The plaintiff, a bricklayer, was going to his work at the cement plant where he had been employed four or five days, and had never seen a train when passing over these tracks. About 1,000 men were there employed, and this was the only road leading to the plant. No question is raised by defendant as to its duty to give warning signals at this crossing; and it is not now disputed that such signals were not given on this occasion.

The road to the plant turned off the improved highway and followed a winding course to the railroad crossing, a distance (as it scales on the map) of about 450 feet. This was a rough dirt road covered with loose crushed stone, and it was down grade from the main highway to the crossing. The plaintiff was naturally required to give some attention to driving his car on this kind of a road. Although a majority of my associates attach little or no importance to audible signals as a warning to the wayfarer, I think in this case at least, sharp blasts of the whistle or the ringing of the bell would have been of great value to plaintiff who was listening as he drove along this crooked road, with his view of the track largely obscured.

Such attempts as could be made to use what is regarded by the majority as the more valuable protective sense, were in fact made. As plaintiff turned into the road about 400 feet from the crossing, he looked and had a view of the tracks to the south (from which direction the train came) for a distance from one-half to three-quarters of a mile. He saw nothing and proceeded on his way. After he passed the " bunk house " and was about 75 feet from the track, he had another view and looked. Here he could see to the south about 700 to 800 feet, and to the north 500 to 600 feet. He saw no train and had heard no signals. He then pro-

ceeded through a cut where his view in both directions was entirely obstructed. In this short cut there was a sharp down grade. When he came out he was about 26 feet from the nearest rail of the northbound track. The first danger he would encounter was from a train on the south-bound track, so he looked north. Then he looked south and the train "loomed on top" of him. Since emerging from the cut he had reduced his speed to twelve miles an hour, but had passed over the space in less than two seconds. The train was approaching at 90 feet a second. It is perhaps significant as bearing on the opportunity to see, that neither the engineer nor firemen saw plaintiff or his car before the accident occurred.

Under the circumstances just detailed, based on what the jury must have found to be the true facts, it is quite clear to me that reasonable minds might differ in their conclusions concerning the proper degree of care to be exercised under the circumstances; and, therefore, the question of plaintiff's contributory negligence in this case is peculiarly one for the jury. (*Massoth* v. *D. & H. Canal Co.*, 64 N. Y. 524, 529; *Dolan* v. *D. & H. Canal Co.*, 71 id. 285, 288; *Skelton* v. *Lehigh Valley R. R. Co.*, 171 App. Div. 91; *Ticknor* v. *Pennsylvania R. R. Co.*, 208 id. 461.) The plaintiff was not bound to see at his first opportunity to look, nor was he required at his peril to look in the right direction at the right time. If the jury was satisfied that he made the reasonable efforts to discover and avert the danger that a prudent man would have made in like circumstances, it is sufficient and we should not disturb the verdict. (*Greany* v. *Long Island R. R. Co.*, 101 N. Y. 419; *Smith* v. *N. Y. Central & H. R. R. R. Co.*, 177 id. 224, 229.) And if plaintiff approached the crossing with his car under control and his mind on the danger, and had looked once from a proper viewpoint, we may not say as a matter of law he was bound to look again at any particular time or place which we point out as prudent to avoid the accident. (*Carr* v. *Pennsylvania R. R. Co.*, 225 N. Y. 44; *Chamberlain* v. *Lehigh Valley R. R. Co.*, 238 id. 233; *Horton* v. *N. Y. Central R. R. Co.*, 237 id. 38; *Maiorano* v. *Long Island R. R. Co.*, 244 id. 387.)

The fact that no signals were given by the train was a circumstance that could have been considered by the jury in determining the question of plaintiff's contributory negligence. Despite this new doctrine that "hearing is an indifferent guard to safety," there is an unbroken line of authorities to the effect that a traveler depends for protection upon his ears as well as his eyes, and that signals must be given to warn him of danger and that failure to give such signals may furnish a reason for relaxation of vigilance and care on the part of the traveler who has a right to rely on

the performance of duty by those in charge of the train. (*Beisiegel* v. *New York Central R. R. Co.*, 34 N. Y. 622, 624; *Ernst* v. *Hudson River R. R. Co.*, 35 id. 9, 27; *Wall* v. *International R. Co.*, 233 id. 309, 312; *Spitzer* v. *N. Y. Central R. R. Co.*, 211 App. Div. 332; *Salt City Express & T. Co.* v. *N. Y. Central R. R. Co.*, 213 id. 371.)

The cases in which the courts have determined that the plaintiff was guilty of contributory negligence as a matter of law, are those presenting unusual or exceptional facts and leaving nothing in doubt either of inference or fact. In such cases reasonable minds can reach but one conclusion. (*Massoth* v. *D. & H. Canal Co.*, *supra*, 529.) In my judgment, this case does not fall within that class. Unless we say the plaintiff was bound to stop, or to look in a particular direction at some definite place or time, it was a question for the jury to determine whether he exercised the reasonable care the circumstances demanded of a prudent man. The question has been answered in plaintiff's favor; and I vote for affirmance.

HILL, J., concurs.

Judgment and order reversed on the law, with costs, and complaint dismissed, with costs.