FRED A. PROEFROCK, as Administrator, etc., of RICHARD E. PROE-FROCK, Deceased, Respondent, *v.* C. E. DENNEY and JOHN A. HADDEN, as Trustees in Bankruptcy of the Estate of ERIE RAILROAD COMPANY, Bankrupt, Appellants.

Fourth Department, November 10, 1939.

*William L. Marcy, Jr.* [*LeRoy H. Hurlbert* of counsel], for the appellants.

*Albert J. Waterman* [*Bayard J. Stedman* with him on the brief], for the respondent.

LEWIS, J. Plaintiff's intestate, a young man twenty-five years of age, sustained fatal injuries on November 13, 1938, when the car which he was driving northerly on Town Line road in Genesee county collided, on or near a railroad grade crossing, with the side of a moving westbound passenger train operated by the defendants.

At that point the two-track right of way of the Erie railroad runs in an easterly and westerly direction and is intersected at right angles by Town Line road — a narrow, gravel highway which, as it approaches the grade crossing from the south, descends at an average grade of ten per cent in the last three hundred feet. Although the tracks east of the crossing are straight for more than 1,300 feet, the view along the tracks in that direction to be had by one approaching the crossing down grade from the south along Town Line road is obstructed to some extent by a weed-covered embankment. There is proof from which a jury could have found that on the morning of the accident, as plaintiff's intestate approached the crossing down the descending grade from the south, his view along the tracks to the east was not entirely clear until he reached a point at least twenty-seven feet south of the westbound track. Reaching that point, however, he was afforded an unobstructed view easterly along the tracks of more than six hundred feet.

The train involved in the accident comprised three cars — first a gasoline motor car powered by a Diesel engine, followed by a passenger coach, and a baggage car in the rear. The train was westbound running at a speed of forty miles an hour along the more northerly track. The only eye witness to the accident was defendants' engineer who was called as a witness by the plaintiff. From his testimony it appears that he first saw plaintiff's intestate when the latter was driving his Chevrolet car northerly down Town Line road and had reached a point eight or ten feet from the southerly

or eastbound track. The train approaching from the east was then but a short distance from Town Line road. As it passed over the crossing the Chevrolet was seen by the engineer to turn from the road westerly toward the side ditch in the direction in which the train was moving. Observing the unusual course of the Chevrolet, the engineer rose from his seat on the right side of his cab and stepped across to the opposite side, from which point he could look back along the right of way. The rear end of the train had then just passed the Chevrolet which was a mass of wreckage lying on the strip between the east- and westbound tracks forty-six feet west of the crossing.

No witness saw the Chevrolet come in contact with any part of the train. Upon this feature of the case, however, there was testimony by the conductor, who was seated in the second car, that as the train passed over Town Line road he heard " a rumble on the south side " at the end of the coach in which he was seated. At the same time the baggage agent, who was standing by his desk in the baggage car, heard " some kind of a racket on the side of the train." There was also proof that after the accident a steel side piece which supported the southerly steps leading up to the rear vestibule of the passenger coach was dented and bent toward the rear of the car. It also appeared that a stirrup step fastened on the south side of the baggage coach had been forced out of position and bent toward the rear of the train.

The plaintiff has thus far successfully maintained that the death of the intestate resulted from a negligent failure by defendants' servants to give an adequate and timely warning of the approach of the train to the crossing and that defendants failed to assume the statutory burden of proof required of them to establish the decedent's contributory negligence.

The record leaves us in doubt whether under the rule of *Culhane* v. *N. Y. C. & H. R. R. R. Co.* (60 N. Y. 133) and kindred cases, the plaintiff's proof was sufficient to present a question of fact whether defendants' servants caused an adequate and timely warning to be given as the train approached the crossing. We prefer, however, to rest our decision on the proof which bears upon the question of decedent's contributory negligence.

Since September 1, 1913, the burden of proving a decedent's contributory negligence in a death case has been upon the defendant. (Civ. Prac. Act, § 265 [Laws of 1913, chap. 228].) In a majority of cases that question is one for the jury (*Chamberlain* v. *Lehigh Valley R. R. Co.*, 238 N. Y. 233) but that is not the invariable rule. (*Castle* v. *Director-General of Railroads*, 232 N. Y. 430; *Allen* v. *Erie R. R. Co.*, 244 id. 542.) The statutory change, which imposed the burden of proof upon the defendant, did not change the common-law

standard of care required of a deceased — that being a matter of substantive law. In a case such as the one at hand it has been said: " If it does not appear whether or not the deceased exercised proper care when approaching the crossing, or if the proofs are equally balanced, the defendant fails to bear the burden of proof imposed upon it. Such is the substance of the statutory change in the common-law rule. Except for the shifting of the burden of proof, the rule is the same as in cases of personal injury not resulting in death. As a person approaches a railroad crossing in a vehicle he must reduce his speed to a limit which is reasonably safe under the circumstances and conditions and then proceed cautiously and carefully with the vehicle under complete control; and he must employ his senses of hearing and sight to avoid danger. (*Horton* v. *N. Y. C. R. R. Co.*, 237 N. Y. 38, 47; *Fitch* v. *N. Y. C. R. R. Co.*, 233 N. Y. 356.) If no warning is given of the approach of the train, silence may at times suggest some relaxation of vigilance but not an entire absence thereof, as where a traveler has looked where he could see from a proper viewpoint, and is not required to look again immediately before proceeding onto the tracks. (*Carr* v. *Pennsylvania R. R. Co.*, 225 N. Y. 44, 47.) These are circumstances which may make it proper to submit the case to the consideration of the jury. But when one, familiar with the crossing, as deceased was, is heedless of ordinary precautions in a place which he knows to be dangerous, no question remains for a jury to pass on. * * * If he had looked at a proper viewpoint he would have seen the approaching train in time to avoid the accident. (*Miller* v. *N. Y. C. R. R. Co.*, 226 App. Div. 205; affd., 252 N. Y. 546; *Barnasky* v. *N. Y., O. & W. Ry. Co.*, 226 N. Y. 435.) " (*Schrader* v. *N. Y., C. & St. L. R. R. Co.*, 254 N. Y. 148, 150, 151.)

Testing the present record by the rule last quoted above, it appears that the decedent had lived for fourteen years on a dairy farm owned by his father and located less than half a mile from the railroad crossing involved in this action. For a number of years prior to the date of the accident one of the duties performed by the decedent each morning was to convey the farm milk a distance of about a mile to a point on the Broadway road where it was transferred at about seven A. M. to a truck by which it reached its market in Buffalo. It was while in the performance of this duty that he met with fatal injuries for which plaintiff has recovered. On his prior daily trips over a period of years the decedent had passed over the Town Line road grade crossing at about the same time each morning between six-thirty and seven A. M. It also appears that for a number of years the Erie railroad had operated the passenger train involved in this accident on a schedule according to which the train passed over that same grade crossing westbound at about

six-forty-five A. M. The record thus makes it clear that prior to the accident which befell him the decedent, from daily observation, had gained knowledge of the danger to vehicular traffic which conditions at that particular grade crossing presented.

The risk at that point, known and reasonably to be foreseen by the decedent on the morning of the accident, made it imperative that he approach the crossing with his car under such control as would have enabled him to stop it before he reached the tracks and thus avoid contact with the defendants' westbound train which must have been within his clear view for more than six hundred feet east of the crossing while he was within a distance of at least twenty-seven feet from the westbound track. Upon all the evidence and the reasonable inferences to be drawn therefrom most favorable to the plaintiff we believe that the failure by the decedent to exercise the care for his own safety which known danger required of him defeats plaintiff's right to recovery in this action.

In reaching this conclusion we have been influenced by the ruling in *Crough* v. *New York Central R. R. Co.* (260 N. Y. 227) upon facts quite parallel to those presented by the record now before us. An excerpt from the opinion by Chief Judge POUND in that case has peculiar application to our present problem: If the decedent (p. 231) " had checked the speed of his car and looked right and left before he went on the tracks, the conclusion is inevitable that he might have avoided the accident. If he had used his senses of hearing and sight and proceeded cautiously and carefully (*Horton* v. *N. Y. C. R. R. Co.*, 237 N. Y. 38, 47) he would not have failed to sense the approach of the train. He could not, except at his own risk, drive on the railroad track, relying on not having seen a train or heard a signal and taking no further precaution. If the crossing is dangerous, the care should be commensurate with the obvious risk. * * * The evidence in this case points to a total lack of care on the part of the driver." (See, also, rulings upon similar facts in *Miller* v. *New York Central R. R. Co.*, 226 App. Div. 205; affd., 252 N. Y. 546; *Schrader* v. *N. Y., C. & St. L. R. R. Co.*, 254 id. 148; *Brown* v. *Delaware & Hudson Co.*, 231 App. Div. 570.)

The judgment and order from which appeals are taken should be reversed on the law and facts, with costs, and the complaint dismissed, with costs.

All concur, except DOWLING, J., who dissents and votes for affirmance. Present — CROSBY, LEWIS, CUNNINGHAM, TAYLOR and DOWLING, JJ.

Judgment and order reversed on the law and facts, with costs, and complaint dismissed, with costs.