ELLEN V. WADSWORTH, as Administratrix of the Estate of FREDERICK J. WADSWORTH, Deceased, Respondent, *v.* DELAWARE, LACKAWANNA & WESTERN R. R. Co., Appellant.

Argued November 14, 1946; decided February 27, 1947.

*Hugh McM. Russ* and *Laurence R. Goodyear* for appellant.
I. As a matter of law defendant railroad was not negligent.
(*Matter of Case*, 214 N. Y. 199; *Bowden* v. *Lehigh Valley R. R.
Co.*, 178 App. Div. 413, 226 N. Y. 648; *Foley* v. *N. Y. C. & H. R.
R. R. Co.*, 197 N. Y. 430; *McKeever* v. *N. Y. C. & H. R. R. R. Co.*,
88 N. Y. 667; *Culhane* v. *N. Y. C. & H. R. R. R. Co.*, 60 N. Y. 133.)
II. Plaintiff's intestate was contributorily negligent as a matter
of law. (*Proefrock* v. *Denney*, 283 N. Y. 648; *Crough* v. *New
York Central R. R. Co.*, 260 N. Y. 227; *Buckin* v. *Long Island R.
R. Co.*, 286 N. Y. 146; *Mead* v. *Louer*, 285 N. Y. 230; *Nelson* v.
*Nygren*, 259 N. Y. 71; *LaGoy* v. *Director-General of Railroads*,
231 N. Y. 191; *Weigand* v. *United Traction Co.*, 221 N. Y. 39;
*Miller* v. *New York Central R. R. Co.*, 226 App. Div. 205, 252
N. Y. 546.)

*Melvin H. Zurett* for respondent. I. There is ample evidence
of defendant's negligence to sustain the jury's finding. II.
Decedent was not guilty of contributory negligence as a matter
of law. (*Chamberlain* v. *Lehigh Valley R. R. Co.*, 238 N. Y.
233; *Nicholson* v. *Greeley Square Hotel Co.*, 227 N. Y. 345;
*O'Brien* v. *Lehigh Valley R. R. Co.*, 177 Misc. 25, 289 N. Y. 783;
*Flynn* v. *Long Island R. R. Co.*, 289 N. Y. 283; *Carr* v. *Penn-
sylvania R. R. Co.*, 225 N. Y. 44.)

Lewis, J. The plaintiff's intestate, a truck driver, met his
death in a railroad grade crossing accident which occurred near
the village of Bath, New York, at a point where the defendant's
right of way passes over a country road known as "Avenue A".
At Trial Term the plaintiff had a judgment which has been
affirmed at the Appellate Division, one Justice dissenting.

Upon this appeal by the defendant our inquiry is two-fold —
(a) Was the evidence sufficient to justify the Trial Justice in
submitting to the jury the question of defendant's negligence?
(b) Did, the defendant assume the statutory burden cast upon
it (Civ. Prac. Act, § 265) of proving the decedent's contributory
negligence? In pursuing those inquiries we shall first consider
evidence descriptive of physical conditions at and near the site
of the crossing and those related factors which served to fix
the duty of the railroad's operatives and the decedent as train
and truck approached the crossing.

Although it was assumed upon the trial that at the site of
the accident the defendant's two-track right of way runs east
and west and that Avenue A runs north and south, the fact
should be stated that Avenue A crosses the defendant's tracks at
an angle of 42 degrees. The case involves no increased hazard
due to curves in the railroad right of way near the crossing. The
defendant's tracks west of the crossing — from which direction
the train approached — are straight for a distance of more than
1,500 feet and they continue straight east of the crossing for
more than 2,000 feet. At a point about 1,100 feet west of the
crossing the tracks pass over a railroad bridge which spans
the Cohocton River. From that bridge easterly to the Avenue A
crossing the tracks are laid on an embankment which rises
above the level of the surrounding land at an elevation which
makes railroad traffic along that section of track visible to
highway traffic approaching the crossing from the north on
Avenue A. Along that straight stretch of track extending
1,100 feet west of the crossing the only obstructions to a clear
view between defendant's tracks and Avenue A, as that road
approaches the crossing from the north, are three widely sepa-
rated trees which are near the railroad right of way at locations
respectively 319, 691 and 742 feet from the crossing.

Avenue A — a dirt road — is practically level as it approaches
the railroad crossing from the north. When it reaches a point
75 feet from defendant's right of way the road ascends gradu-
ally 5.21 feet to the level of the tracks. On the west side of
the road 20 feet north of defendant's tracks is the usual rail-
road cross-arm warning sign. On the same side of the road
at a point 250 feet north of the tracks is a statutory disc sign
which serves as a warning to southbound highway traffic. The

evidence is not disputed that as one proceeds southerly along Avenue A and reaches a point 500 feet from the crossing there is available to the right or west a view of defendant's tracks extending from the crossing more than 1,100 feet west to the Cohocton River bridge. As one proceeds further to the south from that point approaching the crossing along Avenue A — to borrow from the charge by the Trial Justice — '' * * * it is perfectly clear that at a point at least 150 to 185 feet from the crossing that a driver could have an unobstructed view up the tracks [to the west] for a distance of at least 1,300 feet, or as far as the river bridge. Any other finding on that point would be contrary to the evidence in the case.''

At the time of his death the decedent — then fifty years of age — was employed by a trucking company which had given him the special assignment of delivering to news depots in southern New York the morning edition of a Rochester newspaper. In performing that mission for a period of at least five years he had made *daily* early morning deliveries at the Soldiers' Home near Bath. In doing so — except on days when weather would not permit — he had passed over Avenue A and the defendant's tracks as a way to shorten his route. At 6:15 A.M. on June 1, 1943 — a clear morning — the decedent was following his usual course southerly along Avenue A approaching the defendant's right of way at a speed of from 10 to 15 miles an hour. The driver's cab in the one and one-quarter ton truck he was operating had a door in each side in the upper half of which was a window 24 inches wide and 20 inches from top to bottom. He occupied the driver's seat which was so stationed that its back was 6 inches behind the rear edge of each door. When the decedent's truck, after ascending the slight grade that leads up to the level of the crossing, had passed over the nearer or westbound track and had almost cleared the further or eastbound track the fatality occurred when the truck was struck on the right rear by an eastbound passenger train operated by the defendant. At the time of the collision the train — then 15 minutes late — was running at a speed of 60 miles an hour with its power shut off preparatory to stopping at the Bath station one-half mile east of the Avenue A crossing.

The plaintiff does not contend that no whistle was sounded as a warning of the train's approach to the crossing. Indeed each of the twelve witnesses who gave evidence upon that point testified that the whistle was sounded. The question was whether the whistle gave a *timely* warning. On that phase of the case the plaintiff points to testimony by the defendant's engineer who, upon his examination before trial, is recorded as having said that he sounded the whistle " just *east* of the river bridge at Soldiers' Home." (Emphasis supplied.) In the same examination before trial and in reference to his answer last quoted above the engineer was asked — " How far would that be from the crossing? " To that question he answered — " 300 feet." Upon the trial when the same witness was called by the defendant, he testified that in his examination before trial, upon being asked when he first sounded the whistle, he had answered " *west* " of the river bridge not *east* as the record of the examination shows. The same witness also stated upon the trial that when, on his examination before trial, he had stated that he had first sounded the whistle " 300 feet " from the crossing he had mistakenly stated that distance and that he desired to correct that misstatement by testifying " 1300 feet." The evidence given by the twelve witnesses who testified as to the whistle warning — some of whom were called by the plaintiff — when considered with other related testimony, is made the basis of a strong argument by counsel for the defendant that the whistle was first sounded more than 300 feet west of the crossing. However, the jury had the right to disbelieve all the witnesses who testified at the trial upon the question as to when the whistle was sounded and to rest their decision on that question upon the single statement made by the defendant's engineer in his examination before trial. As the credibility of witnesses is an inquiry within the province of the triers of the facts we are constrained to conclude that the Trial Justice was warranted in submitting to the jury the question of the defendant's alleged negligence in failing to give a timely warning of the train's approach to the crossing.

Passing to the remaining question — whether the defendant met the burden of proving the decedent's contributory negligence — we conclude that the record strongly supports the defendant's position and accordingly that the judgment should be reversed and the complaint dismissed.

Since the enactment of chapter 228 of the Laws of 1913, the burden of proving contributory negligence by the decedent in a death case has been upon the defendant. (Civ. Prac. Act, § 265.) That question is often one of fact for the jury (*Chamberlain* v. *Lehigh Valley R. R. Co.,* 238 N. Y. 233, 235) but it is not the invariable rule. The statutory change, which cast the burden of proof on the defendant, did not change the common-law standard of care required of a decedent — that being a matter of substantive law. Upon that subject this court has had occasion to say — " The change in the rule as to the burden of proof is not a change in the substantive law and does not alter the measure or duty of proper care. If it does not appear whether or not the deceased exercised proper care when approaching the crossing, or if the proofs are equally balanced, the defendant fails to bear the burden of proof imposed upon it. Such is the substance of the statutory change in the common-law rule. Except for the shifting of the burden of proof, the rule is the same as in cases of personal injury not resulting in death. * * * But when one, familiar with the crossing, as deceased was, is heedless of ordinary precautions in a place which he knows to be dangerous, no question remains for a jury to pass on." (*Schrader* v. *N. Y., C. & St. L. R. R. Co.,* 254 N. Y. 148, 150, 151.)

In the present case the decedent, in the performance of his assigned duties, had gained accurate knowledge of conditions existing on Avenue A at the point where it crosses defendant's tracks at grade. Having driven a truck across those tracks at that point daily for a period of five years he knew, or in the exercise of reasonable care he should have known, that the danger reasonably to be apprehended at that crossing required of him to be alert and careful for his own safety. " The omission on the part of the railroad company of some usual act, purposed to give warning to travelers on the highway may tend to throw one off his guard; but it does not justify the non-observance of ordinary care on his part." (*Avery* v. *N. Y., O. & W. Ry. Co.,* 205 N. Y. 502, 506.) The evidence is not disputed that on the clear morning when this accident occurred and while the decedent was traversing on Avenue A the last 500 feet leading to the railroad crossing, there was available to him an almost unobstructed view of the defendant's straight

track — extending 1,100 feet west of the crossing — along which the train approached which caused his death. Finally there came a time when the decedent's truck — continuing its advance under his own guidance and operation — reached the defendant's westbound track. There — as was said in *Cote* v. *Boston & Maine Railroad* (278 N. Y. 78, 85) — "* * * he could have stopped in safety, but either he did not have his car under such control that he could stop, or he elected to proceed. In either event, he failed to exercise the degree of care he should have exercised, and having failed so to do, there can be no recovery in this action."

The ruling by this court in *Crough* v. *New York Central R. R. Co.* (260 N. Y. 227, 231–232) may be applied with equal cogency to evidence in the present case which bears upon the lack of care by the decedent for his own safety — " The driver had to give attention to his car but it is difficult to suggest a ' possible hypothesis based on the evidence ' which would exonerate him of the charge of contributory negligence. He was heedless of ordinary precaution in a place which he must have known to be dangerous or he would not have driven on the tracks immediately in front of the train. If he had checked the speed of his car and looked right and left before he went on the tracks, the conclusion is' inevitable that he might have avoided the accident. If he had used his senses of hearing and sight and proceeded cautiously and carefully (*Horton* v. *N. Y. C. R. R. Co.*, 237 N. Y. 38, 47) he would not have failed to sense the approach of the train. He could not, except at his own risk, drive on the railroad track, relying on not having seen a train or heard a signal and taking no further precaution. If the crossing is dangerous, the care should be commensurate with the obvious risk. * * * Could it be said that under any hypothesis arising from and based on the evidence he did all that he could do to avoid danger? The evidence in this case points to a total lack of care on the part of the driver." (See, also, *Schrader* v. *N. Y., C. & St. L. R. R. Co.*, *supra*, pp. 150–152; *Castle* v. *Director-General of Railroads*, 232 N. Y. 431, 434–435; *Miller* v. *N. Y. C. R. R. Co.*, 226 App. Div. 205, affd. 252 N. Y. 546; *Proefrock* v. *Denney*, 258 App. Div. 5, affd. 283 N. Y. 648.)

The judgments should be reversed and the complaint dismissed, with costs in all courts.

DESMOND, THACHER, DYE and FULD, JJ., concur; LOUGHRAN, Ch. J., and CONWAY, J., dissent and vote to affirm upon the ground that whether or not the defendant had sustained the burden of establishing the decedent's contributory negligence was a question of fact for the jury.

Judgments reversed, etc.