ROBERT J. LATOURELLE, as Administrator of the Estate of MARGARET C. LATOURELLE, Deceased, Appellant, *v.* NEW YORK CENTRAL RAILROAD COMPANY, Respondent.

Argued February 24, 1950; decided May 26, 1950.

*Paul F. Donohue* and *William J. Sullivan* for appellant. I. Plaintiff's intestate was not guilty of contributory negligence as a matter of law. (*Noseworthy* v. *City of New York,* 298 N. Y. 76; *Greany* v. *Long Island R. R. Co.,* 101 N. Y. 419; *Mullen* v. *Schenectady Ry. Co.,* 214 N. Y. 300; *Braun* v. *Buffalo Gen. Elec. Co.,* 200 N. Y. 484; *Bond* v. *Schenectady Ry. Co.,* 251 N. Y. 315; *Massoth* v. *Delaware & Hudson Canal Co.,* 64 N. Y. 524; *Nicholson* v. *Greeley Square Hotel Co.,* 227 N. Y. .345; *Flynn* v. *Long Island R. R. Co.,* 289 N. Y. 283; *Chamberlain* v. *Lehigh Valley R. R. Co.,* 238 N. Y. 233.) II. The only witnesses who testified concerning the actual happening of the accident and the movements of the automobile were interested witnesses employed directly by defendant and who were on duty at the time of this collision. They were the fireman on the striking train and the trainman on the rear of train No. 40. (*Piwowarski* v. *Cornwell,* 273 N. Y. 226; *Anderson* v. *Baltimore & Ohio R. R. Co.,* 96 F. 2d 796; *Volkmar* v. *Manhattan Ry. Co.,* 134 N. Y. 418; *Miller* v. *Ocean S. S. Co.,* 118 N. Y. 199; *Canajoharie Nat. Bank* v. *Diefendorf,* 123 N. Y. 191; *Honegger* v. *Wettstein,* 94 N. Y. 252; *Texas & Pacific Ry. Co.* v. *Carlin,* 189 U. S. 354; *Greany* v. *Long Island R. R. Co.,* 101 N. Y. 419.)

III. Driving across a dangerous two-track crossing *slowly* can never be stamped as negligent. Similarly, defendant must be guilty of negligence, if it requires a person to travel across and clear a two-track crossing in less than five seconds under the prevailing visibility of that day, without any warning of the approach of its locomotive by light or whistle or, in the alternative, to be struck and killed. (*Fischer* v. *New York Central R. R. Co.*, 188 Misc. 72, 273 App. Div. 135; *Horton* v. *New York Central R. R. Co.*, 237 N. Y. 38; *Bond* v. *Schenectady Ry. Co.*, 251 N. Y. 315.) IV. Plaintiff's proof of defendant's negligence presented questions of fact to be decided by the jury. (*Noseworthy* v. *City of New York*, 298 N. Y. 76; *Wadsworth* v. *Delaware, L. & W. R. R. Co.*, 296 N. Y. 206; *Paley* v. *New York Central R. R. Co.*, 297 N. Y. 1017; *Byrne* v. *New York Central & H. R. R. R. Co.*, 104 N. Y. 362.) V. The Appellate Division erred in determining that testimony of plaintiff that the whistle was not blown and that the headlight was not lighted, being negative in character, was of doubtful sufficiency. (*Culhane* v. *New York Central & H. R. R. R. Co.*, 60 N. Y. 133; *Foley* v. *New York Central & H. R. R. R. Co.*, 197 N. Y. 430; *Baker* v. *Lehigh Valley R. R. Co.*, 248 N. Y. 131; *Crough* v. *New York Central R. R. Co.*, 260 N. Y. 227; *Stokes* v. *Delaware & Hudson R. R. Corp.*, 234 App. Div. 597, 260 N. Y. 644; *Moore* v. *New York Central & H. R. R. R. Co.*, 75 Hun 381; *O'Flaherty* v. *Nassau Elec. R. R. Co.*, 34 App. Div. 74, 165 N. Y. 624; *Feist* v. *Peters*, 120 N. Y. S. 805; *Volkmar* v. *Manhattan Ry. Co.*, 134 N. Y. 418.)

Charles E. Nichols for respondent. I. Plaintiff's intestate was guilty of contributory negligence as a matter of law. (*Day* v. *Town of New Lots*, 107 N. Y. 148; *Dunham* v. *Townshend*, 118 N. Y. 281; *People ex rel. Warschauer* v. *Dalton*, 159 N. Y. 235; *Goetz* v. *Duffy*, 171 App. Div. 680; *Zaun* v. *Long Island R. R. Co.*, 139 App. Div. 719, 201 N. Y. 599; *Daniels* v. *Staten Island R. T. Co.*, 125 N. Y. 407; *Turck* v. *New York Central & H. R. R. R. Co.*, 108 App. Div. 142; *Turnier* v. *New York Central R. R. Co.*, 124 Misc. 269; *Stack* v. *New York Central & H. R. R. R. Co.*, 96 App. Div. 575; *Purdy* v. *New York Central & H. R. R. R. Co.*, 87 Hun 97.) II. Even on the assumption that train No. 40 no longer interfered with the driver's view, she was still guilty of contributory negligence as

a matter of law. (*Crough* v. *New York Central R. R. Co.*, 260 N. Y. 227; *Barry* v. *Rutland R. R. Co.*, 203 App. Div. 287, 236 N. Y. 549; *Cote* v. *Boston & Maine R. R.*, 278 N. Y. 78; *Schrader* v. *New York, C. & St. L. R. R. Co.*, 254 N. Y. 148; *Miller* v. *New York Central R. R. Co.*, 226 App. Div. 205, 252 N. Y. 546; *Brown* v. *Delaware & Hudson Co.*, 231 App. Div. 570; *Fitch* v. *New York Central R. R. Co.*, 233 N. Y. 356; *Barnasky* v. *New York, O. & W. Ry. Co.*, 226 N. Y. 435; *Bowden* v. *Lehigh Valley R. R. Co.*, 178 App. Div. 413, 226 N. Y. 648; *Cassidy* v. *Fonda, J. & G. R. R. Co.*, 200 App. Div. 241, 234 N. Y. 599.) III. There was no substantial proof that defendant was negligent. (*Culhane* v. *New York Central & H. R. R. R. Co.*, 60 N. Y. 133; *Foley* v. *New York Central & H. R. R. R. Co.*, 197 N. Y. 430; *Matutinovich* v. *New York Central R. R. Co.*, 182 App. Div. 451; *Griffith* v. *Long Island R. R. Co.*, 147 App. Div. 693.)

LOUGHRAN, Ch. J.   In this action for wrongfully causing the death of the plaintiff's decedent, the Trial Judge, after all the proof was in, withdrew the case from the jury and dismissed the complaint because in his opinion (1) the decedent's death was clearly the result of her failure to use ordinary care for her own safety and (2) there was in any event no evidence of negligence of the defendant railroad company on the occasion in question.   This dismissal of the action stands affirmed by the Appellate Division and the judgment of that court is now before us for review on an appeal therefrom which the plaintiff prosecutes as of right (see Civ. Prac. Act, § 588, subd. 1, cl. [b]).

The decedent and her mother-in-law were killed when a motor vehicle in which they were riding was struck by an Albany-Boston railroad train at a point in a Rensselaer County locality where a country road running north and south crossed a double set of east-west railroad tracks of the defendant.   Warning of the location of the tracks was given by a " Railroad Crossing " black and white cross-arms sign which stood north of the tracks and by a " R.R." disc sign located on the south side thereof.   There were no stationary bells or lights.   For 5,600 feet west of the crossing and for 1,900 feet east thereof the tracks were straight.   An unobstructed view to the east could be had from any point on the road within 8 feet from the south side of the crossing according to witnesses for the plaintiff, or at any

point within 112 feet therefrom according to witnesses for the defendant.

On November 3, 1945, at about 4:30 P.M., the decedent and her mother-in-law rode northerly toward the crossing. Apparently the decedent drove the automobile. The day was "gray", "dreary", "dim", and "hazy", as all the witnesses declared, but, as the same witnesses also said, visibility at that time and place was good for about a quarter of a mile. Twenty-five feet or so short of the southerly tracks, the decedent stopped the car to let an eastbound train (No. 40) go by. After it had passed and while she was driving over the crossing, a westbound train (No. 49) then and there came along on the north track and struck the car. Both women were dead when thereafter their bodies were found half a mile west of the crossing.

The negligence imputed to the defendant was an asserted failure of the engineer of the westbound train (No. 49) to blow the whistle as that train approached the crossing. Put into direct discourse the testimony of that engineer runs this way: I blew the whistle on No. 49 from the time I reached a whistling post 1,361 feet east of the crossing up to the moment of the crash. I did not see the automobile until I hit it. When my fireman hollered to me, I blew two long blasts, then a short one and then another long one. I do not know whether one, two, three or four seconds elapsed between any two of the blasts. I never saw the end of train No. 40 as it passed No. 49. I know a time came when there was an absence of sound from No. 40. At that time, as I believe, I was entering the crossing.

The fireman on No. 49 first saw the automobile when it was on the tracks in front of him and then yelled at the engineer. Both the fireman and the baggageman on No. 49 said they heard the whistle blow. But the fireman on No. 49 — though he was looking out the window of its cab at the time — was unable to estimate how near the rear end of No. 40 was to the crossing when he cried out to his engineer. Nor would he say how close No. 49 was to the crossing when he first saw the automobile. Nor would he say whether No. 40 was a short train or a long one. The baggageman on No. 49 did not see the collision.

On the other hand, a flagman on the eastbound train (No. 40) said he heard no whistle; the fireman on No. 40 said he did not

" know whether the whistle was blown on 49 "; and the engineer on No. 40, when he was asked whether No. 49 gave any whistle, said: " No. I couldn't hear it." In respect of that testimony, the Appellate Division said: " Negative testimony of this character is of doubtful sufficiency as against the direct, positive evidence  *  *  *  that the whistle was blown " (275 App. Div. 123, 125). But the engineer and fireman of No. 40 were so situated that they would have heard the whistle on No. 49 if it had been sounded, or so a jury could find. Hence the testimony that they heard no whistle was strong evidence of negligence of the defendant. The relevant principle is stated by Mr. Wigmore in these words: " Courts have often been asked to exclude testimony based on what may be called *negative knowledge, i.e.,* testimony that a fact did not occur, founded on the witness' failure to hear or see a fact which he would supposedly have heard or seen if it had occurred. Yet there is no inherent weakness in this kind of knowledge.  *  *  *  It may even sometimes be stronger than affirmative impressions. The only requirement is that the witness should have been so situated that *in the ordinary course of events he would have heard* or seen the fact had it occurred. This sort of testimony is constantly received,— particularly in proof of the failure to give railroad signals ". (2 Wigmore on Evidence [3d ed.], § 664, p. 778. The emphasis is firsthand. See, too, the cases brought together in 162 A. L. R. 13 *et seq.*) Thus the refusal of the Trial Judge to submit to the jury the issue respecting the defendant's negligence was error in our unanimous opinion.

A majority of us think the jury should also have been permitted to decide the second question, viz.: Did the defendant discharge its duty of maintaining the affirmative of the issue as to contributory negligence on the part of the decedent. (See Decedent Estate Law, § 131.)

The engineer, the fireman and a flagman of No. 40 (the eastbound train) all said they looked back to the crossing after No. 40 had passed over it and then saw the automobile of the decedent move slowly northward toward the defendant's tracks at about the time when No. 49 was approaching the crossing from the east. None of these witnesses saw the collision. Their testimony, it will be noticed, was pretty much a set of estimates in respect of time, speed and distance made from one place or

another on a rapidly moving railroad train. No rule of law compels the acceptance of testimony so lacking in precision. The engineer and fireman of No. 40 say its engine passed the engine of No. 49 "in the vicinity of" the whistling post that was 1,361 feet east of the crossing. If these witnesses underestimated by 539 feet the distance between No. 49 and the crossing at the moment when, as they said, the decedent's car started toward the tracks, then No. 49 was at that moment beyond the range of the decedent's vision, since the tracks curved sharply to the south at a point 1,900 feet east of the crossing. This and other possibilities should be canvassed by a jury. They cannot be dealt with as questions of law.

The judgments should be reversed and a new trial granted, with costs to abide the event.

FULD, J. (dissenting). I am constrained to disagree with the court's decision.

Although there was evidence from which a jury could have found that defendant railroad was negligent, I believe that plaintiff's intestate was contributorily negligent as a matter of law and that the complaint was therefore properly dismissed in the courts below. Regardless of the testimony of distances and measurements given by the railroad employees, the nature of the terrain at the crossing — permitting one to see to the east and west for a considerable distance — was such that plaintiff's intestate could not have failed to observe the westbound train which hit her if she had used her "senses of hearing and sight and proceeded cautiously and carefully". (*Crough* v. *New York Central R. R. Co.*, 260 N. Y. 227, 231.) Her negligence consisted either in crossing before the eastbound train had progressed far enough to give her an unobstructed view of the tracks to the east, whence the westbound train was coming (see *Zaun* v. *Long Island R. R. Co.*, 201 N. Y. 599, affg. 139 App. Div. 719; *Daniels* v. *Staten Island R. T. Co.*, 125 N. Y. 407, 410; *Heaney* v. *Long Island R. R. Co.*, 112 N. Y. 122, 128), or, if the tracks in front of her were clear at the time, in failing to look toward the east before crossing. (See *Wadsworth* v. *Delaware, L. & W. R. R. Co.*, 296 N. Y. 206, 213; *Schrader* v. *New York, C. & St. L. R. R. Co.*, 254 N. Y. 148, 150–151; *Miller* v. *New York Central R. R. Co.*, 252 N. Y. 546; *Horton* v. *New York Central R. R. Co.*, 237 N. Y. 38, 47.)

The judgment of the Appellate Division should be affirmed, with costs.

CONWAY, DESMOND and DYE, JJ., concur with LOUGHRAN, Ch. J.; FULD, J., dissents in opinion in which LEWIS and FROESSEL, JJ., concur.

Judgments reversed, etc. [See 301 N. Y. 677.]