Henry A. Hudson, J.
This action was instituted by the plaintiff to recover for personal injuries and property damages resulting when an automobile owned and driven by him collided at a grade crossing in the city of Oswego, New York with a train through the alleged negligence of the defendant. The action was tried at the November, 1954, Trial Term of Supreme Court in Oswego County and resulted in a jury verdict in favor of the plaintiff on November 26, 1954. Appropriate motions were made by the defendant during and at the conclusion of the trial for a nonsuit, dismissal of the complaint, a directed verdict and a new trial. On December 7, 1954 the *169 defendant obtained an order to show cause pursuant to section 457-a of the Civil Practice Act seeking to set aside the verdict of the jury and for a directed verdict in favor of the defendant and for a dismissal of the plaintiff’s complaint on the ground that the plaintiff was guilty under the evidence of contributory negligence as a matter of law and in the alternative for an order setting aside the verdict as against the weight of evidence and directing a new trial.
Upon the trial of the action there was much conflicting testimony as to the plaintiff’s ability to see through the windshield, and windows of his automobile; as to the location of freight cars stored or parked on adjacent tracks and affecting a view of approaching trains and as to the existence of a light on the approaching train.
It was my opinion at the close of the evidence that there were questions of fact which should be submitted to the jury and I consequently did so. Such procedure has been deemed good practice often avoiding the necessity of a new trial. (Civ. Prac. Act, § 457-a, subd. 3; Church v. Staley, 281 App. Div. 928; Estate Property Corp. v. Hudson Coal Co., 139 Misc. 808.)
In the last-cited case, the court stated at page 810: ‘ * This practice, moreover, is justified by practical consideration. It operates to the detriment of neither party and facilitates the final disposition of the litigation by producing a record on which the action of the trial court dismissing the complaint may be affirmed or the verdict of the jury reinstated by an appellate court.”
Upon more deliberate reflection than was possible during the trial and after reviewing the testimony of the plaintiff, it now appears to the court that the verdict of the jury was unsupported by sufficient evidence in respect to the plaintiff’s freedom from contributory negligence. It is consequently the duty of the court to set aside such verdict and direct a verdict dismissing the plaintiff’s complaint. (Civ. Prac. Act, § 457-a.)
The facts and circumstances which compel me to this conclusion are as follows:
The accident in question occurred late in the evening of October 31, 1952 at the defendant’s crossing on West Ninth Street in the city of Oswego, N. Y. West Ninth Street runs in a generally north and south direction. The weather was clear. The road was clear. The defendant’s crossing consisted of four sets of tracks it being 57.35 feet from the most northerly rail to the most southerly rail. It is approximately 5% feet between the rails on each set of tracks and 11 feet between each set of tracks. On the westerly side of West Ninth Street there *170 is a gravel or cinder walk approximately 5 feet in width. This walk was estimated by the plaintiff at 10 feet and by the defendant’s engineer at 13% feet from the edge of the street. West Ninth Street between the third and fourth sets of tracks is approximately 25 feet in width. There are two street lights one located on each side of the crossing and a short distance therefrom.
The plaintiff testified that he had lived in the vicinity of the crossing in question all of his life and was thoroughly familiar with it. He stated that he knew there was a flagman on duty during the day and knew that there was no flagman on duty at the time he was crossing defendant’s tracks. He stated that on the night in question he was proceeding southerly on West Ninth Street and stopped at its intersection with West Utica Street, which he stated, according to his measurement was approximately 250 feet from the most southerly or fourth set of tracks. He stated that he started his car from a standing position and within about 150 feet had attained a speed of from 12 to 15 miles per hour, at least not to exceed 15; that when he started up he could see ahead for 300 feet and that there was no other automobile approaching him or on the street in front of him; that he continued at the same rate of speed and did not slow up or diminish his speed until the time of the collision. He stated that after he had started up from West Utica Street he observed a line of 10 or 12 freight cars standing on what he later found to be the third set of tracks and that they were parked across the sidewalk on the west side and that the lead car extended between the sidewalk and the street so that the view of the fourth track, (the most southerly track to the west), was obscured. He stated that at the time he crossed the third track he was 3 or 4 feet from the right-hand side of the street and that just as he crossed, and had gotten across the third set of tracks he observed the defendant’s train bearing down upon him. The plaintiff stated that the left front window of his automobile was down and that as he approached the defendant’s tracks he looked to his left (the east), and observed nothing approaching from his left; that he looked to the right and saw nothing except the parked freight cars and.that he heard no signal, whistle, horn or noise indicating the approach of a train. The plaintiff was driving alone. There were no eyewitnesses to the events leading up to the collision. The plaintiff further testified that earlier in the evening he had parked his automobile in the business section of Oswego and that when he had returned to it to drive home just before the accident, this being Halloween night, he discovered that all of the windows on his automobile *171 had been marked up with soap or wax by Halloween pranksters and that these marks were on both sections of his windshield and the front window on the right-hand or passenger side of the front seat. He stated that he could see through the windshield and the windows although he admitted on cross-examina-tian that his vision was somewhat impaired.
There was a great deal of conflicting testimony as to whether there were parked railroad ears on the third set of tracks between the sidewalk and the road but crediting as I must for the purposes of this motion, the testimony most favorable to the plaintiff, it must be accepted as fact that there was a string of 10 or 12 freight cars extending from a point between the street and sidewalk westerly. This being so, the plaintiff’s view of the fourth set of tracks or of any train approaching thereon would obviously be completely obstructed until such time as he arrived at the third set of tracks. This situation has a great bearing on the negligence of the defendant but it also is of vital importance in considering the plaintiff’s freedom from contributory negligence. If the plaintiff’s view to the west was completely obstructed, the fact that he looked to the west as he was approaching defendant’s four sets of tracks would serve no useful purpose as he would know from what he observed that he could not tell whether a train was approaching.
The plaintiff conceded that at no time after attaining his maximum speed of 12 to 15 miles per hour did he slow up and consequently upon his own admission he had travelled the last 100 feet before the collision at a speed of from 12 to 15 miles per hour and with no slackening in his pace. The plaintiff further conceded that he was progressing on the right-hand side of West Ninth Street within 3 or 4 feet from the westerly edge of the road. While the plaintiff obviously was entitled to operate his car in this position, when faced with the obstruction to his view resulting from the freight cars on the third set of tracks and when faced with no other travel on the street, he manifestly failed to take advantage of the increased visibility and safety which would have been afforded him had he kept to the center or left of the center of the street. By keeping as far as possible to the left he would not only have been able to see a train approaching from the west much sooner but his ability to stop his car in time to avoid a collision would also have been greatly enhanced.
In addition to the plaintiff’s inability to see because of the extending freight cars and his failure to slow down at any time while approaching the defendant’s tracks, while keeping almost *172 to the right-hand edge of the street, the plaintiff was operating his car with its windshield and right-hand front window marked up with soap or wax to the extent that he conceded that his visibility was at least somewhat impaired.
The plaintiff was required to establish by a fair preponderance of the evidence that he was not guilty of any negligence which in any way caused or contributed to the cause of the accident. This not being a death case, the burden was entirely upon him. It was not a question of whether the defendant or the plaintiff was the most negligent. In determining this it is necessary to apply the rule that the plaintiff was obliged to conduct himself in the operation of his automobile in the same manner that a reasonably careful and prudent person would have at the same time and under the same circumstances. If he did, he would have been justified in proceeding as he did and would not have been guilty of negligence. If he did not, the contrary would result. (Schrader v. New York, Chicago & St. Louis R. R. Co., 254 N. Y. 148, 150.)
Generally such questions can only be resolved after the consideration of conflicting testimony so that a determination by a jury is required but in this case there is no conflicting testimony on the point in question. The only testimony is that of the plaintiff himself. He concedes his inability to see the oncoming train by reason of the foreign obstruction in the shape of a string of boxcars standing in his line of vision. He concedes that at no time did he slacken his speed from 12 to 15 miles per hour when approaching or while upon the tracks. He concedes his familiarity with the crossing and his knowledge that no flagman was on duty during the nighttime. He concedes that he took no precaution to keep as far to the left to increase his visibility and gain space within which to stop should it become necessary and finally he concedes that he was operating a motor vehicle with its windshield and right-front side window partially obscured by soap or wax covering the same, both of which were in his line of vision where danger should have been anticipated and where danger was. I am satisfied that no reasonably careful and prudent person would operate a motor vehicle at the time and place in question in such a manner and under such circumstances. In doing so, I feel that the plaintiff was guilty of contributory negligence as a matter of law. The test as to the sufficiency of evidence in such cases was well stated by Chief Judge Lehman in Blum v. Fresh Grown Preserve Corp., (292 N. Y. 241) at pages 245, 246:
*173 “ The courts below have not mistaken their power. They have found that by no rational process could the trier of the facts base a finding in favor of the defendant upon the evidence here presented. This court has frequently pointed out that ‘ insufficient evidence is, in the eye of the law, no evidence.’ In Matter of Case (supra [214 N. Y. 199], p. 204), opinion by Cardozo, J., it reiterated that rule and added: 1 In the words of Maule, J., in Jewell v. Parr (13 C. B. 916), “ When we say that there is no evidence to go to a jury, we do not mean that there is literally none, but that there is none that ought reasonably to satisfy a jury that the fact sought to be proved is established.” ’
‘‘ The sufficiency of evidence ‘ reasonably to satisfy a jury ’ cannot be mechanically measured. It is * incredible as matter of law ’ only where no reasonable man could accept it and base an inference upon it. That depends upon considerations which vary in accordance with the circumstances of the particular case. It would serve no purpose here to analyze the evidence produced by the defendant. When considered in its setting of facts which are undisputed it lacks, we conclude, the substance which is required reasonably to support the finding of the jury.”
This question has been considered by our highest court on many occasions. The rule, I believe, is well settled that each case must be determined upon its own facts. (Schrader v. New York, Chicago & St. Louis R. R. Co., 254 N. Y. 148, supra, wherein the court stated, p. 151: ‘ ‘ Each case is governed by its own conditions and circumstances. No two crossing accidents are identical.”) There are a number of these decisions which I believe support the interpretation which I have placed upon the plaintiff’s evidence in this case. Most of them have been made in death cases where the burden of proof is upon the defendant. They are, therefore, entitled to even more weight in the present case where the only evidence which can be considered is that of the plaintiff himself.
Miller v. New York Cent. R. R., Co. (226 App. Div. 205, 208, affd. 252 N. Y. 546): “ While generally contributory negligence in a grade crossing case presents, a question for the jury, the rule governing a nonsuit or dismissal of the complaint is the same as in any negligence case. (We do not refer to the statutory action. Civ. Prac, Act, § 265.) There must be some evidence to support a finding that plaintiff’s negligence did not contribute to the accident, else there cap. be no recovery.”
Schrader v. New York, Chicago & St. Louis R. R. Co. (supra, p. 151): “ But when one, familiar with the crossing, as deceased was, is heedless of ordinary precautions in a place which he *174 knows to be dangerous, no question remains for a jury to pass on. The evidence in this case points conclusively to a total lack of care on the part of the deceased. If he had looked at a proper viewpoint he would have seen the approaching train in time to avoid the accident. ’ ’
Crough v. New York Cent. R. R. Co. (260 N. Y. 227, 231): ‘ ‘ The driver had to give attention to his car, but it is difficult to suggest a ‘ possible hypothesis based on the evidence ’ which would exonerate him of the charge of contributory negligence. He was heedless of ordinary precaution in a place which he must have known to be dangerous or he would not have driven on the tracks immediately in front of the train.”
Cote v. Boston & Maine R. R. (278 N. Y. 78). In this case Judge Hubbs, after quoting with approval Crough v. New York Cent. R. R. Co. (supra) stated at page 85: “To the same effect is the rule under decisions of the Massachusetts courts: 1 If, by reason of darkness or for any other reason the plaintiff’s view of the track was obstructed so that he was unable to see the approaching car and engine, it was his duty to act with reasonable care and caution and to stop until he could ascertain whether he could cross safely.’ * # * Here, after deceased reached the east-bound track, he had a clear view for a long distance. There he could have stopped in safety, but either he did not have his car under such control that he could stop, or he elected to proceed. In either event he failed to exercise the degree of care he should have exercised, and having failed so to do, there can be no recovery in this action.”
Wadsworth v. Delaware, L. & W. R. R. Co. (296 N. Y. 206). In this case Judge Lewis writing for the court, after discussing with approval the decisions in the above-quoted cases, held that the plaintiff was guilty of contributory negligence as a matter of law and dismissed the complaint.
The general rule is that as one approaches a railroad crossing of which he has knowledge he must reduce his speed to a limit which is reasonably safe under the circumstances and conditions present and proceed then cautiously and carefully with the vehicle under complete control and he must employ his senses of hearing and sight to avoid danger. If he does not do so, he is guilty of contributory negligence as a matter of law. (Horton v. New York Cent. R. R. Co., 237 N. Y. 38, 47; Crough v. New York Cent. R. R. Co., supra; Miller v. New York Cent. R. R. Co., supra; Wadsworth v. Delaware, L. & W. R. R. Co., supra.)
The plaintiff has called to my attention the case of Flynn v. Long Is. R. R. Co. (289 N. Y. 283). In this ease, however, the *175 complaint was dismissed at the close of the plaintiff’s case. It was a death action.and the burden of proof as to contributory negligence was upon the defendant. In that case a new trial was granted in the Court of Appeals by a divided court. I do not feel that the circumstances are comparable to the present case.
The plaintiff also has called to my attention the case of Carr v. Pennsylvania R. R. Co. (225 N. Y. 44). I do not believe that the circumstances of this case are comparable with the present case. It is interesting to observe that at page 46, the court stated: ‘ ‘ Indisputably, if plaintiff had looked only at a point where the obstruction shut off his view of the approaching train, he could not recover. * * * When one who is approaching a railroad crossing is heedless of ordinary precautions; when he fails to observe the rules of conduct which are dictated by common experience and common sense, no question remains for a jury to pass upon.”
The plaintiff has also called my attention to the case of Latourelle v. New York Cent. R. R. Co. (301 N. Y. 103). This case involved a death action. The only witnesses sworn were the employees of the railroad. The decision was by a divided court and the majority stated (p. 108): “ A majority of us think the jury should also have been permitted to decide the second question, viz: Did the defendant discharge its duty of maintaining the affirmative of the issue as to contributory negligence on the part of the decedent.”
The defendant’s motion to set aside the verdict and for a directed verdict in favor of the defendant dismissing the plaintiff’s complaint is granted, without costs of this motion.